**In re ESTATE OF Joseph Owen BOOTE, Jr.**

Court of Appeals of Tennessee, at Nashville.

Feb. 6, 2007 Session.

Dec. 27, 2007.

Permission to Appeal Denied by Supreme Court May 27, 2008.

Andrée Sophia Blumstein and William L. Harbison, Nashville, Tennessee, for the appellees, Helen Boote Shivers and Linda Boote Gerritsen.

Walter W. Bussart and Lee Bussart Bowles, Lewisburg, Tennessee, for the appellant, Martha M. Boote.

## OPINION

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. WILLIAM B. CAIN, J., not participating.

This is the fourth appeal involving the disposition of the sizeable estate of a Marshall County resident. It is also the second appeal regarding the dispute between the testator's widow and his children from a previous marriage over the validity of the third codicil to the testator's will. This codicil dramatically alters the distribution of the testator's estate because it would entitle his widow, who is barred by an antenuptial agreement from receiving an elective share of her husband's estate, to receive one-third of the estate. In the third appeal, *In re Estate of Boote*, 198 S.W.3d 699 (Tenn.Ct.App.2005), we vacated the judgment of the Chancery Court for Marshall County admitting the will and two codicils to probate in solemn form because we concluded that the widow's filing of a declaratory judgment seeking to establish the validity of the third codicil amounted to a timely contest of the will and the first two codicils. We remanded the case to enable the trial court, based on evidence presented by the parties, to determine whether the widow had established the purported third codicil as a lost or destroyed testamentary instrument and

to enable the testator's children to contest the validity of any or all of the codicils to their father's will. Rather than permitting the parties to present evidence regarding all the elements required to establish a lost or destroyed testamentary instrument, the trial court limited the scope of the hearing on remand to (1) whether the testator had validly executed the third codicil and (2) whether the widow should be barred from establishing the third codicil because of unclean hands. The trial court found in the widow's favor on both issues, and the testator's children have appealed. They assert that the trial court improperly narrowed the scope of the hearing on remand and that they should have been permitted to present evidence with regard to all the elements needed to establish a lost or destroyed testamentary instrument. We agree and, therefore, vacate the August 30, 2006 and September 13, 2006 orders, and remand the case for further proceedings consistent with this opinion and our earlier opinion.

### I.[1]

Martha McCaleb Lingner Boote married Joseph Owen Boote, Jr. on December 28, 1990 in Lewisburg, Tennessee. He was eighty-three years old, and she was seventy-four. Both had been previously widowed. Mr. Boote had two children from his first marriage.[2] Ms. Boote had one child from a previous marriage.[3] Ms. Boote and Mr. Boote each had several grandchildren. Both were well off finan-

---

1. Complex legal issues cannot be considered or decided in a factual vacuum. The facts set forth in this appeal, many of which can also be found in *In re Estate of Boote*, 198 S.W.3d 699 (Tenn.Ct.App.2005), are drawn from the current record on appeal. Because the parties have yet to have a full and proper hearing with regard to many of these facts, our inclusion of any particular fact in this opinion should not be construed a conclusive finding-

of-fact that prevents the parties from presenting additional evidence regarding the fact or as preventing the trial court from making findings of fact based on the evidence actually presented by the parties.

2. Helen Boote Shivers and Linda Boote ("the Boote daughters").

3. Pamela L. Smith.

cially, although Mr. Boote was far wealthier than Ms. Boote.[4] Eleven days before the wedding, Ms. Boote and Mr. Boote entered into an antenuptial agreement that eliminated or dramatically restricted their respective statutory rights to the assets or estate of the other in the event of divorce or death.[5]

On July 16, 1991, Mr. Boote executed a new will consistent with the terms of the antenuptial agreement. The will was prepared by Michael D. Sontag, the same attorney who had prepared the antenuptial agreement. It established a $600,000 marital trust, the income from which was to be paid to Ms. Boote during her lifetime if Mr. Boote predeceased her. On Ms. Boote's death, the corpus of the marital trust was to be divided equally between the Boote daughters. The will established generation-skipping trusts in the names of the Boote daughters and directed that Mr. Boote's residuary estate and personal property be divided equally between them. The will named the Boote daughters to serve as co-executrices of Mr. Boote's estate.

Approximately seven years after executing his will, Mr. Boote requested another attorney, Thomas A. "Drew" Davidson, to prepare a codicil to his July 16, 1991 will. This codicil transformed the $600,000 marital trust into an outright bequest to Ms. Boote and also added a $300,000 bequest to Mr. Boote's sister. It also incorporated a "no contest" clause into the will[6] and designated Ms. Boote to serve as the sole executrix of his estate. Mr. Boote executed this codicil on June 18, 1998. On December 29, 1998, Mr. Boote executed a second codicil to his will, also prepared by Mr. Davidson, making a $100,000 bequest to the First Presbyterian Church of Lewisburg. Mr. Davidson did not examine or consider the Bootes' antenuptial agreement when he prepared these codicils.

Mr. Boote visited Mr. Davidson again a little over one year after executing the second codicil. Mr. Boote had heard that a spouse could dissent from a will and take an elective share of the deceased spouse's estate. Without considering the Bootes' antenuptial agreement, Mr. Davidson advised Mr. Boote that if Ms. Boote dissented from his will, she would be entitled to an elective share of his estate. He also advised Mr. Boote that Ms. Boote's share would be taken "off the top" and that the Boote daughters would be required to pay all the estate taxes and expenses out of their shares. Believing that such an arrangement would be unfair to his daughters, Mr. Boote told Mr. Davidson that he wanted to structure his will so that Ms. Boote and his two daughters would receive equal shares of his estate after the payment of all estate taxes and expenses.

Mr. Davidson advised Mr. Boote that the distribution he desired could be accomplished with a third codicil. Accordingly, at Mr. Boote's request, Mr. Davidson prepared a third codicil directing that Mr. Boote's residuary estate would be divided equally among Ms. Boote, Ms. Shivers, and Ms. Linda Boote after the payment of all estate taxes and expenses. The third codi-

**4.** Financial disclosure statements prepared shortly before the wedding placed Ms. Boote's net worth at approximately $1.4 million and Mr. Boote's net worth at approximately $9.3 million.

**5.** This court upheld the validity of this antenuptial agreement in *Boote v. Shivers*, 198 S.W.3d 732 (Tenn.Ct.App.2005).

**6.** Mr. Davidson knew that Mr. Boote anticipated a will contest. At Mr. Davidson's suggestion, the no contest clause was included in an effort to stave off a will contest.

cil also named Mr. Davidson co-executor of the estate along with Ms. Boote. Mr. Boote executed the third codicil on February 14, 2000.

Six to eight weeks after Mr. Boote executed the third codicil, Mr. Davidson received a telephone call from Ms. Smith, Ms. Boote's daughter. She said he had messed things up by persuading Mr. Boote to leave too much money to her mother. She said that the Boote daughters would be furious, that there would be an enormous fight over the estate, and that it would be all Mr. Davidson's fault. When Mr. Davidson suggested to Ms. Smith that she did not know what was in the third codicil, she responded that it was her understanding that under the third codicil, Mr. Boote's estate would be split three ways among her mother and the Boote daughters. Mr. Davidson told Ms. Smith, somewhat disingenuously, that she did not have a full grasp of what was in the third codicil, that Mr. Boote had made some additional provisions for Ms. Boote, and that the third codicil was a well written document that would be enforceable.

In late April 2001, well over a year after the execution of the third codicil, Mr. Boote again visited Mr. Davidson at his office. By this time, Mr. Boote was ninety-three years old, and his health was failing. He could barely walk on his own. He was accompanied by Ms. Boote and an assistant Ms. Boote hired to help her care for Mr. Boote. Ms. Boote and the assistant waited in the front room of Mr. Davidson's office out of earshot while Mr. Boote met with Mr. Davidson in a conference room.

According to Mr. Davidson, Mr. Boote was upset. He said that he had made a lot of people mad, that everyone was fussing at him, and that no matter what he did, he could not seem to please everyone. He asked Mr. Davidson what would happen if

Ms. Boote simply dissented from his will. Mr. Davidson did not answer Mr. Boote's question directly and instead told him that his wishes were covered by the third codicil. Mr. Boote replied that the third codicil was causing him a lot of trouble and that he wanted Mr. Davidson to tear it up. Mr. Boote said that his family was going to fight no matter what he did and that Ms. Boote could simply dissent from the will. Mr. Davidson claims he attempted to persuade Mr. Boote not to revoke the third codicil. However, he admits that he did not mention the antenuptial agreement or warn Mr. Boote that it could prevent Ms. Boote from dissenting from the will and taking an elective share of Mr. Boote's estate.

Mr. Davidson informed Mr. Boote that if he wanted to revoke the third codicil, he would have to tear it up himself. However, when Mr. Davidson offered to retrieve the third codicil from his office safe so that Mr. Boote could tear it up, Mr. Boote said that he did not want to tear it up, that Ms. Boote was coming down the hall, and that he did not have time to tear it up. As Mr. Boote started to get up to leave Mr. Davidson's conference room, he exclaimed, "Just tear the damn thing up." Mr. Boote then walked out of the conference room and left Mr. Davidson's office.

On June 1, 2001, Mr. Boote was admitted to the Marshall Medical Center. He had suffered several mini-strokes and was diagnosed with kidney failure. Three days later, he was transferred to Oakwood, a skilled nursing facility. Mr. Boote eventually fell into a coma and died at Oakwood on September 12, 2001. Since his death, Mr. Boote's estate has been the subject of aggressively fought litigation and considerable dispute between his widow and his daughters.

Approximately one month before Mr. Boote died, his family and the Oakwood

staff told Mr. Davidson that Mr. Boote was not going to recover. Mr. Davidson contacted four local attorneys for advice regarding what he should do about the third codicil.[7] He told them that a client had directed him to destroy a legal document that he had prepared, that he had not destroyed the document as directed, and that the client had since fallen into a coma and was unlikely to recover. He did not provide them with the details of the case. According to Mr. Davidson, all four told him that he should follow his client's last directive and destroy the document.[8]

Without consulting Ms. Boote or anyone else acting on Mr. Boote's behalf, Mr. Davidson retrieved the third codicil from his office safe, made a copy of it, and then destroyed the original by feeding it into a paper shredder in his office. He placed the copy in his office safe along with Mr. Boote's other legal papers. By his own admission, he knew, at the time he shredded the original of the third codicil, that his actions did not comply with the statutory requirements for revoking a codicil by physical destruction. Mr. Davidson did not tell anyone what he had done.

The day after Mr. Boote died, Mr. Davidson began preparing a petition to have the will and the first and second codicils admitted to probate in solemn form in the Chancery Court for Marshall County. The third codicil was not mentioned at all in the petition, nor was a copy of it attached to the petition along with the will and the first two codicils. The petition estimated the value of Mr. Boote's estate to be approximately fifteen million dollars,[9]

requested a November 15, 2001 hearing at which the will and the first two codicils would be formally offered for probate in solemn form, and asked that letters testamentary be issued to Ms. Boote as the executrix nominated by the first codicil. The petition listed the other named beneficiaries and stated that Ms. Boote would provide them with notice of the hearing and their right to contest the will and first two codicils at that time.

The petition explicitly stated that Ms. Boote was "aware of no document(s) in existence that either revoke or alter the instruments being offered by her for probate in the Decedent's Last Will & Testament and two (2) Codicils thereto." In mid-October 2001, Mr. Davidson met for the first time with the attorneys for the Boote daughters. Mr. Davidson told these lawyers that there had at one time been a third codicil to Mr. Boote's will that provided for an equal division of Mr. Boote's estate among Ms. Boote and the Boote daughters. He also told them that Mr. Boote had revoked the third codicil, but he provided no further details. According to Mr. Davidson, he was careful to use the word "revoked" rather than "destroyed" or some other word. He did not mention that he had kept a copy of the third codicil.

During this meeting, the attorneys for the Boote daughters showed Mr. Davidson a copy of the Bootes' antenuptial agreement. According to Mr. Davidson, this was the first time he had ever seen the agreement. He realized immediately that it purported to bar Ms. Boote from dissenting from Mr. Boote's will and taking

---

**7.** One of these local attorneys was Walter M. Bussart, who later represented Ms. Boote in the probate proceedings in her personal capacity as a beneficiary of the estate.

**8.** It is not clear whether Mr. Davidson informed the four attorneys he consulted that the document in question was a codicil to a

will. The omission of this material fact would obviously have affected the advice they would have given him.

**9.** Mr. Boote's estate was actually worth well over twice this amount at the time of his death.

an elective share of his estate. He obtained a copy of the agreement, and later that day or the following day, he gave a copy to Ms. Boote. He did not tell her that it purported to bar her from dissenting from Mr. Boote's will.

On November 2, 2001, the trial court entered an agreed order signed by counsel for Ms. Boote and the Boote daughters in which they stipulated that the will, "sans Codicils," should be admitted to probate in solemn form and waived the requirement that the witnesses who attested the will appear and testify at the November 15, 2001 hearing. The order stated that the agreement did not apply to the first and second codicils "at the present time." Also on November 2, 2001, Mr. Bussart filed a notice of appearance as counsel of record for Ms. Boote in her individual capacity as a named beneficiary of the estate.

Less than two weeks later, on November 15, 2001, the hearing to present the will and first two codicils for probate in solemn form proceeded as scheduled. Mr. Davidson appeared on behalf of Ms. Boote in her capacity as the executrix, and Mr. Bussart appeared on her behalf in her capacity as a named beneficiary. The trial court acknowledged the agreed order stipulating to the validity of the will and heard testimony from the attesting witnesses to the execution of the first and second codicils. Although all parties knew that a third codicil had existed at one time, no one mentioned that fact to the trial court at the hearing.

At the conclusion of the hearing, counsel for the Boote daughters offered to prepare a draft order admitting the will and the first two codicils to probate in solemn form and to submit it for the court's approval. The trial court instructed the parties to work together on the draft order. At Mr. Davidson's request, the trial court directed that the court clerk could issue letters

testamentary to Ms. Boote on a provisional basis after the hearing but stated that they would be subject to the terms of the final order once it was entered. Over the next few weeks, counsel for the parties circulated several drafts of proposed orders but were unable to reach an agreement. They eventually filed competing versions of a final order for the court's approval.

The facts regarding when and how Ms. Boote and Mr. Bussart became aware of the circumstances surrounding the destruction of the third codicil are sharply contested. The Boote daughters assert that Ms. Boote and Mr. Bussart were well aware before the November 15, 2001 hearing of the circumstances surrounding the destruction of the third codicil and the existence of a copy of the third codicil. At some point, Mr. Davidson told Mr. Bussart that he had made a copy of the third codicil before he destroyed the original. He also had a copy of the third codicil hand-delivered to Mr. Bussart in an envelope bearing the following notation: "Walter: Martha has never seen this. She only knew it existed at one time ... She never knew any of the details." Mr. Davidson also sent a copy of the third codicil to counsel for the Boote daughters. In the accompanying cover letter, Mr. Davidson said that he could "no longer remain silent" about the third codicil and that he anticipated being deposed regarding the details surrounding the destruction of the original.

On the same day that he received his copy of the third codicil, Mr. Bussart filed a declaratory judgment petition in the trial court on behalf of Ms. Boote in her individual capacity as a named beneficiary. The petition was filed under the same case number as the pending probate proceedings, and a copy of the third codicil was attached to the petition. The petition requested a hearing to determine whether

the third codicil should be admitted to probate along with the will and the first two codicils. Mr. Bussart noticed the deposition of Mr. Davidson a few days later.

The trial court did not hold a hearing on the admissibility of the third codicil. Instead, on December 14, 2001, one week after the declaratory judgment petition was filed, the court entered an order admitting the will and the first two codicils to probate in solemn form. The order did not mention the third codicil or Ms. Boote's pending petition for declaratory judgment. Following the entry of the December 14, 2001 order, the Boote daughters moved to dismiss the declaratory judgment petition on grounds of res judicata and judicial estoppel and requested that the trial court quash the deposition notice to Mr. Davidson to allow them more time to conduct discovery on the issues raised in the declaratory judgment petition.

The trial court held a hearing on the Boote daughters' motion on January 9, 2002. At the hearing, Mr. Bussart moved for a new trial. The trial court agreed to allow Mr. Bussart to reduce his motion to writing, took the motion to dismiss under advisement, and stayed Mr. Davidson's deposition pending a ruling on the motion to dismiss.

Two days later, Mr. Bussart filed a motion for post-judgment relief based on Tenn. R. Civ. P. 52.02, 59.04, and 60.02. In a sworn affidavit accompanying the motion for post-judgment relief, Ms. Boote stated that she had relied on Mr. David-

son, to provide her with all of her husband's testamentary instruments and that Mr. Davidson had given her only the will and the first two codicils. She claimed that she first learned that the third codicil was not properly revoked on December 7, 2001, and that she had no reason to believe, prior to the November 15, 2001 hearing, that originals or copies of any other wills or codicils of her husband were still in existence. The motion requested that the trial court amend the December 14, 2001 order admitting the will and the first two codicils to probate in solemn form to include the third codicil or set aside the December 14, 2001 order and determine whether the third codicil should be admitted to probate.

The trial court set a hearing for February 20, 2002 on Ms. Boote's motion for post-judgment relief. At the hearing, Ms. Boote complained that she had been unable to obtain evidence regarding the details surrounding the destruction of the third codicil because the trial court had stayed Mr. Davidson's deposition, and Mr. Davidson had refused to discuss the matter unless he was deposed.[10] The trial court refused to lift the stay on Mr. Davidson's deposition and took Ms. Boote's motion for post-judgment relief under advisement. The court discussed the motion to dismiss the declaratory judgment petition and the motion for post-judgment relief at another hearing on June 5, 2002.

On July 3, 2002, the trial court entered an order granting the Boote daughters' motion to dismiss the declaratory judg-

---

10. At the time, Mr. Davidson was still representing Ms. Boote in her capacity as the executrix for Mr. Boote's estate. Attorneys are ethically permitted to discuss or testify regarding the circumstances surrounding the execution and revocation of wills and codicils, at least when authorized by the executor or executrix to do so. 1 Jack W. Robinson, Sr., Jeff Mobley & Andrea J. Hedrick, Pritchard on Wills and Administration of Estates § 389, at 543 n. 41, § 390, at 544–45 & n. 50 (6th ed. 2007) ("*Pritchard*"). Ms. Boote was eventually removed as the executrix for Mr. Boote's estate. *Estate of Boote v. Shivers*, No. M2003–02656–COA–R3–CV, 2005 WL 1277867 (Tenn. Ct.App. May 27, 2005) (No Tenn. R.App. P. 11 application filed).

ment petition and denying Ms. Boote's motion for post-judgment relief. The trial court acknowledged that Ms. Boote filed her declaratory judgment petition a week before the entry of the December 14, 2001 order but nevertheless held that the declaratory judgment petition was barred by the principles of res judicata and judicial estoppel. The trial court noted that Ms. Boote had been questioned specifically regarding whether the will and the first two codicils were the only testamentary instruments to be admitted to probate and that it had placed "great weight" on Ms. Boote's testimony in response to these questions in deciding to admit them to probate in solemn form.[11] With respect to the motion for post-judgment relief, the trial court held that it could not grant Ms. Boote's motion because probate in solemn form "trumps" the Tennessee Rules of Civil Procedure relating to post-judgment motions and Ms. Boote had not alleged fraud in the procurement of the December 14, 2001 order. Ms. Boote appealed.

On October 21, 2005, this court issued two opinions addressing appeals related to the hotly-contested litigation over the estate of Joseph Owen Boote, Jr. In one opinion, we reversed the trial court's decision to invalidate the Bootes' antenuptial agreement and to permit Ms. Boote to claim an elective share and one year's support from Mr. Boote's estate.[12] In the other opinion, we vacated the trial court's December 14, 2001 order admitting Mr. Boote's will and the first two codicils to probate in solemn form. *In re Estate of Boote*, 198 S.W.3d 699, 726 (Tenn.Ct.App. 2005). We concluded that the trial court should have treated Ms. Boote's petition for a declaratory judgment as a timely contest of Mr. Boote's will and the first two codicils. *In re Estate of Boote*, 198 S.W.3d at 715.

During the oral arguments in *In re Estate of Boote*, we requested the parties to file supplemental briefs regarding the validity of the revocation of the third codicil to Mr. Boote's will.[13] The supplemental briefs revealed that the parties agreed on the material facts surrounding the attempted revocation of the third codicil but disagreed regarding whether these facts could support the conclusion that the third codicil had been properly revoked.[14] Based on the essentially undisputed evidence and the supplemental briefs, we held that the attempted revocation of the third codicil was ineffective as a matter of law. *In re Estate of Boote*, 198 S.W.3d at 726.

Because the record and the supplemental briefs also indicated substantial agreement regarding the authenticity of the third codicil, we noted that the only factual issue regarding the third codicil that appeared to be unresolved was whether Mr. Boote had validly executed it. *In re Estate of Boote*, 198 S.W.3d at 726 n. 47. Accordingly, we remanded the case with directions to the trial court to determine whether Mr. Boote had validly executed the will and then to permit Ms. Boote to proceed with her contest. *In re Estate of Boote*, 198 S.W.3d at 726.

---

11. Contrary to the trial court's assertion, the transcript of the November 15, 2001 hearing shows that Ms. Boote was not questioned at the hearing regarding whether the will and the first two codicils were all of the instruments that needed to be admitted to probate. In fact, the transcript shows that Ms. Boote did not testify at the November 15, 2001 hearing at all.

12. *Boote v. Shivers*, 198 S.W.3d 732, 746 (Tenn.Ct.App.2005).

13. *In re Estate of Boote*, 198 S.W.3d at 721.

14. *In re Estate of Boote*, 198 S.W.3d at 721.

Even though our October 21, 2005 opinion had not addressed the right of the Boote daughters to contest any of the codicils to their father's will, the Boote daughters filed a timely petition for rehearing expressing concern that our October 21, 2005 opinion unduly restricted the scope of the proceedings on remand. They specifically requested this court to broaden the scope of the remand in two respects. First, they sought the opportunity to investigate more fully when and how Ms. Boote and Mr. Bussart discovered the circumstances surrounding Mr. Davidson's destruction of the third codicil. Second, they sought an opportunity to contest all three codicils. *In re Estate of Boote*, 198 S.W.3d at 731.

From the Boote daughters' petition for rehearing, it became apparent that while the facts had not been disputed in the supplemental briefing, they could be in dispute upon remand. Accordingly, we endeavored to clarify that our October 21, 2005 opinion was only intended to return the parties to the point in time where the trial court would need to determine Ms. Boote's standing to contest the will by establishing the lost or destroyed codicil. As of that time, neither the Boote daughters nor Ms. Boote had been afforded an opportunity to fully pursue discovery related to the requirements for and against establishing the validity of a lost or destroyed codicil or to test the adequacy of their evidence through summary judgment motions or an evidentiary hearing. Therefore, we stated in response to the motion for rehearing:

> The remand order in our October 21, 2005 opinion dealt only with the issues raised in the case and nothing more. Its purpose was to put the parties in precisely the same position they would have been in had the trial court properly held that the filing of the declaratory judgment petition and third codicil was the functional equivalent of a notice of contest to the will and first two codicils. While the opinion expressly authorizes Ms. Boote to proceed with a contest if she chooses to do so, nothing in the opinion prevents Ms. Shivers and Ms. Gerritsen from also contesting the will and all three codicils if that is their desire. In the context of these proceedings, all the parties are free to use all the tools at their disposal to discover any non-privileged matter involved in the pending proceedings, subject of course to the trial court's supervision.

*In re Estate of Boote*, 198 S.W.3d at 731–32. Accordingly, while Ms. Boote was bound by the antenuptial agreement as determined in *Boote v. Shivers*, 198 S.W.3d 732 (Tenn.Ct.App.2005), she remained free to establish standing to contest Mr. Boote's will and the first two codicils to the will via the lost third codicil. The Boote daughters also remained free to challenge Ms. Boote's efforts to establish the third codicil as a lost or destroyed testamentary instrument and, if Ms. Boote establishes the third codicil as a lost or destroyed testamentary instrument, the Boote daughters could contest not only that codicil but the other two as well.

When the case returned to the trial court, the parties disagreed regarding the permissible scope of the remand. With regard to the third codicil, Ms. Boote argued that the only issue that had not been definitively decided by this court was whether Mr. Boote had validly executed the third codicil. The Boote daughters disagreed and insisted that they remained free to challenge and that Ms. Boote should be required to prove (1) that the lost codicil was not revoked, (2) that the original of the third codicil had been lost or destroyed, and (3) the contents of the third codicil.

Ms. Boote filed a motion for partial summary judgment seeking to establish the following facts: (1) that the third codicil had not been revoked, (2) that the original of the third codicil had been destroyed, (3) that the contents of the third codicil are those contained in the purported copy, and (4) that the third codicil was validly executed. The Boote daughters opposed the motion on the grounds that many of the facts relied on by Ms. Boote were genuinely disputed and that Ms. Boote was not entitled to a judgment as a matter of law. Specifically, they pointed to (1) the opinion of a certified forensic examiner that the purported signature of Mr. Boote on the first page of the third codicil is a forgery, (2) the inability of the attesting witnesses to identify the signature on the first page of the codicil as Mr. Boote's signature, (3) the inability of the attesting witnesses to identify the purported first page of the third codicil as the same first page that was attached to the original of the third codicil when Mr. Boote executed it, (4) the textual difference between the purported first page of the third codicil and the remaining three pages, and (5) the evidence regarding Mr. Boote's lack of testamentary capacity when the third codicil was signed.

The trial court conducted a hearing on Ms. Boote's motion on August 5, 2006. Despite the significant and unresolved factual issues, the trial court, relying on its understanding of the law of the case doctrine, granted Ms. Boote's motion for partial summary judgment. The court concluded, as a matter of law, (1) that the third codicil had not been revoked, (2) that the original of the third codicil had been lost or destroyed, and (3) that the copy of the third codicil tendered by Ms. Boote is sufficient to establish the contents of the third codicil.[15]

Thereafter, on August 7, 2007, the trial court conducted a hearing to determine whether Ms. Boote had standing to contest the will and the first two codicils and to address the Boote daughters' argument that the doctrine of unclean hands should prevent Ms. Boote from contesting their father's will and the first two codicils.[16] Based on the evidence presented at the hearing, the trial court concluded that Mr. Boote had validly executed the third codicil and that the doctrine of unclean hands did not prevent Ms. Boote from pursuing her claims based on the third codicil.[17] The Boote daughters have appealed from the trial court's August 30, 2006 and September 13, 2006 orders.

## II.

The efforts for the past sixteen years to articulate and give full and proper effect to Mr. Boote's testamentary decisions reflect Murphy's Law [18] in action. The actualization of this pessimistic view of things has enjoyed a fair degree of assistance from

---

**15.** The order embodying these findings was entered on September 13, 2006.

**16.** The unclean hands argument is based on the Boote daughters' contention that Ms. Boote was aware of the existence of the third codicil and that it had not been effectively revoked on November 15, 2001 when she presented the will and the first two codicils for probate in solemn form.

**17.** The order embodying these findings was entered on August 30, 2006.

**18.** "Murphy's Law" is the name given to various aphoristic expressions of the apparent perverseness and unreasonableness of things. In its most common form, Murphy's Law states that "anything that can possibly go wrong will go wrong." 10 The Oxford English Dictionary 113 (2d ed.1993); The American Heritage College Dictionary 896 (3d ed.1997).

the changing narrative and questionable actions of Mr. Davidson who prepared the third codicil and the person to whom much of the complexity of this case can be traced. This case has sunk into a procedural morass despite the diligent efforts of the other attorneys and the trial court. The purpose of this opinion is to provide a clear path to solid ground and speedy and final resolution of this dispute.

■ We turn first to the trial court's reliance on the law of the case doctrine. This doctrine is a longstanding rule of judicial practice, rather than a constitutional mandate or limit on the power of the courts. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.,* 975 S.W.2d 303, 306 (Tenn.1998); *Orlando Residence, Ltd. v. Nashville Lodging Co.,* 213 S.W.3d 855, 861 (Tenn.Ct.App.2006). It is based on the commonsense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited, *Ladd v. Honda Motor Co.,* 939 S.W.2d 83, 90 (Tenn.Ct.App.1996), and it's purposes are to promote finality and efficiency in litigation, to ensure consistent results in the same litigation, and to assure that lower courts follow appellate decisions. *State v. Jefferson,* 31 S.W.3d 558, 561 (Tenn.2000); *Harrison v. Laursen,* 128 S.W.3d 204, 208 (Tenn.Ct.App.2003).

■ When the law of the case doctrine applies, the ruling of an appellate court becomes the law of the case and is binding in later trials and appeals of the same case if the facts in the second trial are substantially the same as the facts in the first trial or appeal. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.,* 975 S.W.2d at 306; *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group,* 56 S.W.3d 557, 566 (Tenn.Ct.App.2001). While the doctrine applies to issues that were actually decided by the appellate court and to issues that were necessarily decided by implication, it does not apply to dicta. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.,* 975 S.W.2d at 306; *Ladd v. Honda Motor Co.,* 939 S.W.2d at 90. The doctrine does not prevent reconsideration of a previously decided issue when (1) the evidence offered on remand is substantially different from the evidence offered in the initial proceeding, (2) the prior ruling is clearly erroneous and would result in manifest injustice if allowed to stand, and (3) the prior decision is contrary to a change in the controlling law that occurred between the first and second appeal. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.,* 975 S.W.2d at 306; *Watson's Carpet & Floor Covering, Inc. v. McCormick,* 247 S.W.3d 169, 180 (Tenn.Ct.App., 2007) *perm. app. denied* (Tenn. May 14, 2007).

■ In order to establish her standing to contest Mr. Boote's will and the first two codicils based on the third codicil, Ms. Boote must present sufficient evidence with regard to all of the elements required to establish a lost will. Accordingly, she has the burden of proving (1) that the third codicil was validly executed, (2) that the third codicil was not revoked, (3) that the original third codicil has been lost or destroyed, and (4) the contents of the third codicil. 1 *Pritchard* § 51, at 72. The trial court construed our October 21 and December 30, 2005 opinions to contain conclusive, final determinations regarding the last three elements and, based on the law of the case doctrine, limited the scope of the proof on remand to the valid execution of the third codicil and the Boote daughters' unclean hands claim. Thus, the trial court refused to permit the Boote daughters to present other evidence relating to the third codicil and declined to make its

own findings of fact and conclusions of law regarding the issues it believed had already been decided by this court.

The trial court erred by interpreting our earlier opinion as conclusively deciding that the third codicil had not been revoked, that the original third codicil had been lost or destroyed, and that the contents of the third codicil are the same as the contents of the purported copy. Our initial discussion of these issues in the October 21, 2005 opinion emerged from a context in which it appeared that the facts regarding the third codicil were essentially undisputed. At that stage of the proceeding, the parties were offering their interpretations of the evidence before they had a full opportunity to conduct discovery.

Because they had not been provided with an opportunity to present evidence in opposition to Ms. Boote's efforts to establish the third codicil as a lost or destroyed testamentary instrument, the Boote daughters filed a petition for rehearing to confirm that they had preserved their right to contest any or all of the codicils to Mr. Boote's will. In our opinion on the petition for rehearing filed on December 30, 2005, we stated that our earlier opinion dealt only with the issues raised in that opinion. *In re Estate of Boote*, 198 S.W.3d at 731. It did not affect the Boote daughters' right to contest any of the codicils or their right to challenge Ms. Boote's standing to contest the will because their rights had not been at issue. Thus, we stated that "nothing in the [October 21, 2005] opinion prevents [the Boote daughters] from also contesting the will and all three codicils if that is their desire." *In re Estate of Boote*, 198 S.W.3d at 731. We then added that on remand "all the parties are free to use all the tools at their disposal to discover any non-privileged matter involved in the pending proceedings, subject of course to the trial court's supervi-

sion." *In re Estate of Boote*, 198 S.W.3d at 732.

Neither our October 21, 2005 nor our December 30, 2005 opinion purported to decide conclusively that the third codicil had not been revoked, or that the third codicil had been lost or destroyed, or that the contents of the third codicil are the same as the contents of the purported copy. The factual recitations in these opinions are based on the parties' interpretation of the evidence that was contained in the appellate record at the time. However, the purpose of acknowledging the parties' broad discovery rights was to confirm, not to restrict, their right on remand to present additional evidence regarding any of these matters. The introduction of new and different evidence would, by definition, prevent the invocation of the law of the case doctrine.

As it turns out, the Boote daughters engaged in additional discovery and also obtained additional evidence relevant to the third codicil and Ms. Boote's standing to use it to contest Mr. Boote's will and the first two codicils. They were prepared to present this evidence during the proceedings on remand. The trial court should have permitted the Boote daughters to present this new evidence and should also have afforded Ms. Boote an opportunity to present her opposing evidence. After receiving the parties' evidence, the trial court should then have made its own findings of fact and conclusions of law with regard to all the issues properly presented by the parties.

## III.

The essential holding of our October 21, 2005 opinion in this case is that Ms. Boote's December 7, 2001 petition for declaratory judgment was, in legal effect, a contest of Mr. Boote's will and the first two codicils. Thus, following that opinion,

the parties were, and still are, at the threshold of a will contest proceeding. It is thus incumbent on them, under the trial court's direction, to formulate the issues remaining to be tried. Tenn.Code Ann. § 32–4–104 (2007); *In re Estate of Eden*, 99 S.W.3d 82, 88 (Tenn.Ct.App.1995); 1 *Pritchard* § 359, at 516–17.

In addition to Ms. Boote's contest, the Boote daughters have asserted on several prior occasions during this litigation that they may contest not only the third codicil but also the first two codicils. Thus, in order to frame the issues to be tried on remand, the trial court should require the Boote daughters to state whether they are contesting their father's will or any of the codicils and, if so, the basis for their contest.

■ While the parties in this case agree on little, they have consistently agreed throughout this litigation that the original third codicil has not been produced. When the original of a testamentary instrument cannot be found following a testator's death, a strong presumption arises that the testator destroyed or revoked the instrument. *Hickey v. Beeler*, 180 Tenn. 31, 38, 171 S.W.2d 277, 279 (1942); *Shrum v. Powell*, 604 S.W.2d 869, 872 (Tenn.Ct. App.1980); 1 *Pritchard* § 51, at 73. To

rebut this presumption, the person whose claims are based on the missing testamentary instrument must prove: (1) that the instrument was made and executed in accordance with the forms of law, (2) that the instrument was not revoked,[19] (3) that the original of the instrument has been lost or destroyed, and (4) the contents of the instrument.[20] *In re Estate of Boote*, 198 S.W.3d at 726 n. 47; *Pritchard* § 51, at 72–75. Because of the presumption, as well as the desire to avoid fraud that might obscure the testator's wishes,[21] persons seeking to set up a lost testamentary instrument must prove each of these elements by clear and convincing evidence. *Buchanan v. Matlock*, 27 Tenn. (8 Hum.) 390, 395, 400 (1847) ("the clearest and most stringent evidence"); *Shrum v. Powell*, 604 S.W.2d at 871 ("the clearest and most stringent evidence" or "clear, cogent and convincing proof"); *Sanders v. McClanahan*, 59 Tenn.App. at 597–98, 442 S.W.2d at 667–68 ("the clearest and most stringent evidence" or "clear, cogent and convincing proof"); *Wolfe v. Williams*, 1 Tenn.App. 441, 445 (1925) ("clear, cogent and convincing proof").[22]

Because Ms. Boote's contest is based on the third codicil, she has the initial burden of producing evidence to establish the

---

**19.** Evidence on this element must exclude the possibility that the testamentary instrument was revoked by any of the actions listed in Tenn.Code Ann. § 32–1–201 (2007).

**20.** The evidence presented by the Boote daughters regarding the discrepancies with regard to the signature and contents of the first page of the purported copy of the third codicil appear to be more closely related to the issue of whether the contents of the copy of the codicil offered by Ms. Boote are actually the contents of the original codicil that Mr. Boote signed rather than to the execution of the third codicil. In any event, Ms. Boote ultimately has the burden of proving by clear and convincing evidence that the third codicil was made and executed in accordance with

the forms of law and that the contents of the copy of the third codicil are the same as the contents of the original that Mr. Boote signed.

**21.** *Sanders v. McClanahan*, 59 Tenn.App. 590, 597, 442 S.W.2d 664, 667 (1969).

**22.** *See also In re Estate of Cook*, No. E2004–00293–COA–R3–CV, 2004 WL 3021131, at *9 (Tenn.Ct.App. Dec.30, 2004), *perm. app. denied* (Tenn. May 3, 2004) ("the clearest and most stringent evidence" or "clear, cogent and convincing proof"); *In re Estate of Brown*, No. 01A01–9809–PB–00471, 1999 WL 802718, at *5 (Tenn.Ct.App. Oct.7, 1999), *perm. app. denied* (Tenn. Feb. 22, 2000) ("clear, cogent and convincing proof").

third codicil as a lost or destroyed testamentary instrument. In addition to presenting evidence that the codicil was executed in accordance with the forms of law and that the original codicil has been lost or destroyed, she must present clear and convincing evidence that Mr. Boote did not revoke the third codicil and that the contents of the purported copy of the third codicil that she has filed with the court are the same as the contents of the original codicil.

■ If Ms. Boote's case survives a Tenn. R. Civ. P. 41.02(2) motion, the burden of going forward with the evidence shifts to the Boote daughters. At this point, they should be required to present whatever evidence they have in opposition to the evidence Ms. Boote has presented to set up the third codicil as a lost or destroyed testamentary instrument. They should also present their evidence with regard to their contest of any of Mr. Boote's testamentary instruments, if in fact they have contested any of these instruments.[23] Following the presentation of the Boote daughters' evidence, the burden should shift back to Ms. Boote to present rebuttal evidence regarding the establishment of the third codicil as a lost

or destroyed testamentary instrument and to present evidence in opposition to the Boote daughters' contest. Thereafter, the burden of going forward should finally shift back to the Boote daughters to present rebuttal evidence with regard to their contest. Following the presentation of the evidence, the trial court must make findings of fact and provide conclusions of law with regard to all the issues that were formulated by the parties prior to the beginning of the trial. The court's decision should be guided by the separate burdens of proof applicable to each of the issues formulated by the parties.[24]

## IV.

The Boote daughters assert that the trial court erred by failing to hold that the doctrine of unclean hands prevents Ms. Boote from attempting to set up the third codicil as a lost or destroyed testamentary instrument. They insist that Ms. Boote was aware of the existence of the third codicil and misrepresented to the trial court and to this court (1) how and when she learned that Mr. Davidson destroyed the third codicil outside of Mr. Boote's presence, (2) when she first learned that the purported copy of the third codicil

---

**23.** The Boote daughters have expressed in other papers that they intend to contest the third codicil on the grounds that Mr. Boote lacked testamentary capacity when he executed it and that it was the product of undue influence.

**24.** Ms. Boote must present clear and convincing evidence to establish the copy of the third codicil as a lost testamentary instrument. On the other hand, if Ms. Boote establishes the lost will, should the Boote daughters contest any of the codicils, the burden of proof with regard to the contest is on them with regard to any of the contest grounds because they are the contestants. *In re Estate of Elam*, 738 S.W.2d 169, 171 (Tenn.1987); *In re Estate of Eden*, 99 S.W.3d at 88. With regard to a claim that Mr. Boote lacked testamentary ca-

pacity when he executed the third codicil, the Boote daughters must prove lack of testamentary capacity by a preponderance of the evidence. *See Hammond v. Union Planters Nat'l Bank*, 189 Tenn. 93, 99, 222 S.W.2d 377, 380 (1949); *Parham v. Walker*, 568 S.W.2d 622, 624 (1978); *Thomas v. Hamlin*, 56 Tenn.App. 13, 23, 404 S.W.2d 569, 573–74 (1964). With regard to a claim of undue influence, if the Boote daughters present direct evidence of undue influence or sufficient evidence to give rise to the presumption of undue influence, then the burden shifts to Ms. Boote to present clear and convincing evidence that the third codicil was not procured through undue influence. *Kelley v. Johns*, 96 S.W.3d 189, 196 (Tenn.Ct.App.2002); *In re Estate of Maddox*, 60 S.W.3d 84, 89 (Tenn.Ct.App.2001).

existed, and (3) when she obtained a copy of the third codicil. The Boote daughters contend that Ms. Boote became aware prior to November 15, 2001 that Mr. Davidson destroyed the original of the third codicil outside of Mr. Boote's presence and that Mr. Davidson had actually delivered a copy of the codicil to Ms. Boote's lawyer nearly one month before the November 15, 2001 hearing. Ms. Boote maintains that she could not have offered the third codicil at the November 15, 2001 hearing because she did not know that a copy existed or that it had not been properly revoked. She attributes any discrepancies in her testimony to the fact that she is more than ninety years old and can become easily confused over the details of events. Ms. Boote insists that she did not engage in any deliberate misrepresentation.

■■■ The doctrine of unclean hands is a fundamental tenet of the courts of equity. *Segal v. United Am. Bank*, No. W2004–02347–COA–R3–CV, 2005 WL 3543332, at *4 (Tenn.Ct.App. Dec.28, 2005) (No Tenn. R.App. P. 11 application filed). It is intended to protect the courts,[25] and it is based on the principles that he who seeks equity must do equity and that he who has done inequity cannot have equity. *Tuck v. Payne*, 159 Tenn. 192, 197–98, 17 S.W.2d 8, 9 (1929); *Segelke v. Segelke*, 584 S.W.2d 211, 214 (Tenn.Ct.App.1978); *Thomas v. Hedges*, 27 Tenn.App. 585, 592, 183 S.W.2d 14, 16 (Tenn.Ct.App.1944); *See*

*generally* William H. Inman, *Gibson's Suits in Chancery* § 2.09, at 2–9 to 2–11 (8th ed.2004). When the doctrine applies, it provides the court with a basis to decline to grant relief to parties who have willfully engaged in unconscionable, inequitable, immoral, or illegal acts [26] with regard to the subject matter of their claims. *Hogue v. Kroger Co.*, 213 Tenn. 365, 371, 373 S.W.2d 714, 716 (1962); *C.F. Simmons Med. Co. v. Mansfield Drug Co.*, 93 Tenn. 84, 94, 23 S.W. 165, 168 (1893); *Goodwin v. Hunt*, 11 Tenn. (3 Yer.) 124, 126 (1832); *Prism Partners, L.P. v. Figlio*, 1997 WL 691528, at *6; *Cont'l Bankers Life Ins. Co. of the S., Inc. v. Simmons*, 561 S.W.2d 460, 465 (Tenn.Ct.App.1977).

■■■ The trial court offered the following explanation for its conclusion that the unclean hands doctrine was inapplicable in this case:

I believe it will be inequitable to apply the doctrine of unclean hands because I cannot be clearly convinced that Ms. Boote did not know of the type and kind of destruction of Codicil 3 as of the date of the solemn form probate hearing. For that reason alone, I will not dismiss the lawsuit on unclean hands doctrine.... I have analyzed the entirety of the facts and as it relates to that, it appears to the Court that Mr. Davidson knew as of the date of the hearing but I cannot say with certainty in order to

---

**25.** *Bulick v. Thompson*, No. W2004–00816–COA–R3–CV, 2005 WL 123502, at *4 (Tenn.Ct.App. Jan.18, 2005) (No Tenn. R.App. P. 11 application filed); *Dulin v. Dulin*, No. W2001–02969–COA–R3–CV, 2003 WL 22071454, at *4 (Tenn.Ct.App. Sept.3, 2003) (No Tenn. R.App. P. 11 application filed).

**26.** Any willful act regarding a litigated matter which would be condemned and pronounced as wrongful by fairminded persons is sufficient to trigger the doctrine of unclean hands. *Heylandt Sales Co. v. Welding Gas Prods. Co.*,

180 Tenn. 437, 447, 175 S.W.2d 557, 561 (1943); *McDonnell Dyer, P.L.C. v. Select–O–Hits, Inc.*, No. W2000–00044–COA–R3–CV, 2001 WL 400386, at *10 (Tenn.Ct.App. Apr.20, 2001) (No Tenn. R.App. P. 11 application filed); *Prism Partners, L.P. v. Figlio*, No. 01A01–9703–CV–00103, 1997 WL 691528, at *7 (Tenn.Ct.App. Nov.7, 1997) (No Tenn. R.App. P. 11 application filed); *S. Coal & Coke Co. v. Beech Grove Mining Co.*, 53 Tenn. App. 108, 117–18, 381 S.W.2d 299, 303 (1964).

apply equity that Ms. Boote knew that day.

Accordingly, the trial court took the view that the Boote daughters were required to establish the facts underlying their unclean hands argument by clear and convincing evidence.

██ Without offering any citation to authority, Ms. Boote contends that to prove fraud upon the court, the Boote daughters must satisfy a clear and convincing evidentiary burden. Without any citation showing that the standard is otherwise, the Boote daughters respond that both Ms. Boote and the trial court incorrectly assumed that fraud upon the court must be proved by clear and convincing evidence. The evidentiary standard when assessing the evidentiary foundation for an argument that the unclean hands doctrine should be applied is the preponderance of the evidence standard. *Town of Bartlett v. Beaty,* 59 Tenn.App. 406, 417–19, 440 S.W.2d 831, 837 (1967); *Estes v. Morris,* 4 Tenn.App. 120, 122 (1926).[27] Accordingly, the trial court applied an improper evidentiary standard in considering the Boote daughters' unclean hands argument.

Decisions regarding the proper application of the doctrine of unclean hands are heavily fact-dependent and are addressed to the considerable discretion of the trial court. Accordingly, credibility determinations can be pivotal, and the trial court is in the best position to make these determinations because it has the opportunity to view the witnesses as they are testifying. The trial court's decision regarding the Boote daughters' unclean hands argument must be vacated because the trial court used the wrong evidentiary standard. Thus, on remand, the trial court should permit the parties to present their evidence both in support of and in opposition to the Boote daughters' unclean hands claim. Unless the trial court is persuaded by a preponderance of the evidence that Ms. Boote deliberately misled the trial court or this court as to when she learned of the existence of a copy of the third codicil and that the third codicil had not been properly revoked for strategic gain, it should not apply the doctrine of unclean hands to bar her attempt to establish the third codicil as a lost or destroyed testamentary instrument.

### V.

We vacate the August 30, 2006 and September 13, 2006 orders and remand the case to the trial court for further proceedings. Should the parties resist appropriate encouragements to settle,[28] the trial court should direct the parties to formulate the issues to be tried and then should proceed to trial in accordance with this opinion. We tax the costs of this appeal in equal proportions to Ms. Helen Shivers and Ms. Linda Boote and their surety and to Ms. Martha Boote for which execution, if necessary, may issue.

WILLIAM B. CAIN, J., not participating.

---

27. *Cf. Law v. Law,* No. M2006–00433–COA–R3–CV, 2007 WL 3132932, at *9 (Tenn.Ct. App. Oct.26, 2007) (No Tenn. R.App. P. 11 application filed); *Medearis v. Baumgardner,* No. E2005–01785–COA–R3–CV, 2006 WL 770464, at *4 (Tenn.Ct.App. Mar.27, 2006).

28. Parties are always encouraged to resolve their will contest disputes by agreement. 1 *Pritchard* § 381, at 535–36.