FILED
08/06/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 19, 2019 Session

## JAMES RUSSELL VAUGHN, JR. v. SANDRA PIERCE VAUGHN

**Appeal from the Chancery Court for Sullivan County**
**No. 18-139(B)       William K. Rogers, Judge**

_____

### No. E2018-00794-COA-R3-CV
_____

Husband and wife were divorced in 2004. The parties' marital dissolution agreement obligated husband to pay wife $950 a month in alimony. Husband failed to make payments for over ten years. In 2015, wife filed a motion for contempt and order for body attachment seeking to recover the alimony arrearages. At trial, husband argued that the equitable doctrines of laches, waiver, and unclean hands barred wife's claim. The trial court disagreed and awarded wife $114,000 in past due alimony and $1,000 in attorney's fees. Husband appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and JOHN W. MCCLARTY, J., joined.

Robert M. Asbury, Knoxville, Tennessee, for the appellant, James Russell Vaughn, Jr.

Frank L. Slaughter, Jr., Bristol, Tennessee, for the appellee, Sandra Pierce Vaughn.

**OPINION**

**I.**

On July 31, 2001, husband filed for divorce. On April 6, 2004, due to irreconcilable differences, a final divorce decree granted the parties an absolute divorce. A marital dissolution agreement was attached to the final divorce decree. The MDA required husband to provide $950 a month in alimony to wife, on the following terms:

> Husband agrees to provide alimony on a permanent basis by
> way of cash or credit at no less than $950.00 monthly, of

-1-

which $475.00 is due at the first of the month and $475.00 due at the 15th of the month, for wife's support and maintenance that is subject to yearly review and adjustment where Husband agrees to an increase of alimony to wife, not to exceed 10% of Husband's yearly income beginning on the 15th day of April, 2004 and each year following the execution of the Marital Dissolution Agreement the Husband agrees to provide his tax return on April 15th of each year to Wife. Said increase shall occur subject to an increase in Husbands (sic) net income.

[Husband agrees to provide to wife alimony on a permanent basis until her death.][1]

Husband shall be entitled to a reduction in the amount states (sic) as alimony in the event his income decreases. In no event shall this paragraph be interpreted to allow for modification of other provisions of this agreement. In no event is alimony to be reduced by greater than 10% per year due to Husbands (sic) decrease in income.

Husband also agreed to cover numerous additional expenses for wife.

Following the divorce, wife filed a motion to reconsider or in the alternative for a new trial. She alleged that the MDA attached to the April 6, 2004 decree was not consistent with the parties' intention. In husband's response, he alleged that a hearing on wife's motion was necessary, and he requested a new trial only as to the property and support issues. However, on July 3, 2006, wife's motion was dismissed due to inaction by the parties.

On November 23, 2015, wife filed a motion for contempt and order for body attachment. She requested husband be held in contempt for failure to pay $775,751 to wife in arrearages, including past due alimony. On January 15, 2016, she filed an amended motion. The matter was set for a hearing on April 5, 2016. On April 4, 2016, husband filed for a continuance due to his colon cancer, blood clotting disorder, and back injury. His doctor provided a letter stating that the medical conditions preclude husband from traveling, and affects his clarity as a witness.

Following a November 7, 2016 hearing, the parties exchanged correspondence wherein husband's counsel informed wife's counsel of a ten year statute of limitations on

---

[1] Handwritten on the MDA and initialed by four individuals.

judgments that applies to alimony awards. On December 15, 2016, wife filed an amended motion withdrawing her claim for interest[2] and limiting her claim for alimony to the previous ten years; wife also requested recovery for numerous other expenses husband had agreed to pay on wife's behalf under the MDA. The amended motion requested husband pay wife a new total of $234,519 in arrearages, and also attorney's fees and costs.

On June 6, 2017, husband again requested a continuance. He stated that there was "a tragic accident involving his mother and brother." His brother was in the ICU and his mother had been placed in a nursing facility as a result of the trauma.

On July 27, 2017, husband filed his answer. He denied wife's claims for attorney's fees, costs, and body attachment; he requested his own attorney's fees and costs. He raised the defenses of laches and waiver on the basis of wife's ten year delay in seeking recovery of the arrearages. He stated that he had not hidden from wife, and that his whereabouts have been ascertainable by a simple google search for years. Husband also alleged that wife was not entitled to the relief she sought under the doctrine of unclean hands based on wife allegedly having transferred her marital residence to her son prior to the divorce in order to conceal the asset. Subsequent to the transfer, wife filed for bankruptcy. Husband alleged that she did not list the marital home as an asset, nor did she list her "extensive antique collection, valued in excess of One Million Dollars [] as assets." Husband further stated that five mediated agreements were ignored by wife during the pendency of their divorce. The fifth motion to set aside the mediation was ultimately dismissed due to wife's inaction for over two years. After the two-year period, husband alleges that wife "quietly transferred the title of the marital home back to herself for a fee of [o]ne [d]ollar."

Additionally, husband alleged that wife's testimony that she had not been employed since the 1990's and had lived off the generosity of friends was not true and that wife had actually been selling off the antique collection, which would have been a marital asset. Husband further stated that

> [husband] has been unjustly prejudiced by the [wife's] acquiescence as to the actual terms of their 2004 divorce in that the [husband] retained assets that were marital in nature in exchange for not enforcing the terms of the April [] 2001 Marital Dissolution Agreement and that any obligation on the part of the [husband] was moot given his acquiescence to the

---

[2] Wife stated at the hearing that this claim was withdrawn "in the event that the Court was going to find laches would apply." Gross laches occurs where there has been a long and unreasonable acquiescence in adverse rights; "gross laches requires prejudice to the defendant such as [] a considerable accumulation of interest resulting from the unjustified delay of the plaintiff." *Finova Capital Corp. v. Regel*, 195 S.W.3d 656, 660 (Tenn. Ct. App. 2005).

[wife] retaining the marital home and antique collection as well as her failure to prosecute and ultimate dismissal of Motion to Modify the April 2004 Marital Dissolution Agreement.

Husband ultimately claimed that the doctrines of "laches, waiver, voluntary relinquishment[,] and unclean hands" all serve to bar wife from the relief sought.

On August 2, 2017, the parties appeared for a hearing; the court ultimately ordered the parties to attend mediation. The court held that if the matters were not agreed upon through mediation, then the parties were to submit proposed findings of facts and conclusions of law to the court within forty-five days following the failed mediation. In addition, at the close of proof at the August 2nd hearing, husband moved for a directed verdict; the court took the matter under advisement.

Prior to the ordered mediation, wife filed a motion to be declared indigent alleging that her only source of income is Social Security Disability. She moved the court to have husband pay the entire cost of mediation. Husband's responsive motion stated that wife had testified at the hearing that she had no outstanding debt and that her monthly bills were paid in full. The court ordered the parties to split the cost of mediation.

On October 12, 2017, husband submitted a brief in support of his motion for a directed verdict, which was made at the August 2, 2017 hearing. On November 22, 2017, the court denied husband's motion. On January 24, 2018, wife filed a "notice" that she was "now [] asking for interest on past due support as she has not received same."

On April 3, 2018, the court entered its Memorandum and Order. It stated that two mediations were held that resulted in an impasse as to all issues. Following the unsuccessful mediations, neither party filed the proposed findings of fact and conclusions of law ordered by the court. However, the parties did file motions following the hearing; husband filed a brief arguing for his previously requested directed verdict, and wife filed a "supplement to post trial brief" requesting twenty-one additional awards based on the parties' MDA.

The court held that neither party had a credible recollection of any alimony payments having been made, and that no proof was presented regarding the same. The testimony indicated that husband moved several times and did not notify wife of his new mailing addresses. Wife testified that she had unsuccessfully tried to find husband following the divorce. Husband admitted that he did move several times, but argued that he was not hiding and could have been easily found. The court held that wife's testimony indicated that she is under some sort of disability and has "special needs" based on the MDA terms.

The court held husband's testimony that he is under financial constraint was not credible. It held that his tax returns indicate that he has received substantial income through his successful sales commission business. The court then reviewed husband's equitable defenses, including gross laches, waiver, and unclean hands.

Husband argued that gross laches applies to bar wife's claims, because her extensive delay caused him to be unjustly prejudiced. Husband cited *Briceno v. Briceno* for the proposition that even where the

> action is governed by a statute of limitations, [] the doctrine of laches may shorten that time period if the plaintiff is guilty of gross laches. Gross laches occurs where the plaintiff unreasonably acquiesces in adverse rights for a long duration of time…gross laches requires prejudice to the defendant such as the loss of evidence and witnesses or a considerable accumulation of interest resulting from the unjustified delay...

*Briceno v. Briceno*, 2007 WL 4146280, at *4 (Tenn. Ct. App. Nov. 21, 2007).

Husband argued that witnesses were rendered unavailable and that financial records had been destroyed as a result of wife's delay. He further alleged that he was prejudiced because a considerable amount of interest had accrued ($48,000) on the past due alimony. The court held that husband's arguments were not credible. It considered *Briceno*, and noted that the "Court of Appeals in [*Briceno*] reversed the trial court[']s application of gross laches, using an abuse of discretion standard;" *Briceno* held that the trier of fact must conclude that it would be inequitable or unjust to enforce the claimant's rights. *See Id*. Here, the court determined that it would not be inequitable or unjust to enforce wife's rights.

The court also reviewed husband's argument for the application of *Brewer v. Brewer* in support of his waiver argument. *See generally Brewer v. Brewer*, 869 S.W.2d 928 (Tenn. App. 1993). The court held that the *Brewer* case is "decidedly different from this case and does not lend credence to the waiver defense."

The court denied husband's request for the application of the doctrine of unclean hands. The court held that there was insufficient proof presented to place weight on this argument, because the deed was executed prior to the divorce and it was undisputed that husband knew about the property.

Lastly, the court denied wife's claim for twenty-one additional items allegedly owed to her under the MDA. The court held that wife had not presented sufficient proof of these items. The court further held that these items are distinguishable from alimony payments, because they concern incidental expenses, such as telephone services, vehicle

insurance, vehicle maintenance, gas services, utilities, membership fees, etc. The court ordered that wife receive $114,000 in past due alimony ($950/month for ten years). Wife was also awarded $1,000 in attorney's fees. Husband appeals.

## II.

Husband asks this Court to consider whether the trial court erred in refusing to apply the doctrine of laches, waiver, or unclean hands to bar the wife's claim.

## III.

### A.

The parties engaged in several mediations before their divorce was finalized in 2004. As an initial matter, husband argues that the trial court erred, because it failed to rule on which mediated agreement should be applied in the present matter. Husband alleges that mediations occurred on: December 19, 2001, June 16, 2003, July 3, 2003, September 19, 2003, March 5, 2004, and April 6, 2004.

In the final divorce decree, the trial court ratified and incorporated the "March 5, 2004" "Marriage Dissolution Agreement." However, the MDA attached to the divorce decree was dated April 6, 2004. The divorce decree itself was also dated April 6, 2004.[3] On appeal fifteen years later, husband argues that the mention of the March 5, 2004 MDA in the final divorce decree is not a scrivener's error, but instead evinces the fact that an improper version of the parties' mediated agreement was filed with the court along with the April 6, 2004 final divorce decree.

Interestingly, in wife's May 4, 2004 motion to reconsider or in the alternative request for a new trial, she had alleged that the "April 6, 2004 [MDA] [did] not reflect the parties' agreement;" she stated that the wrong MDA was attached to the divorce decree. Husband instead stated, in his May 10, 2004 response, that

> The Marital Dissolution Agreement was entered without any undue influence or otherwise by two consenting adults under their counsel's direction.

> The Marital Dissolution Agreement entered by the Court has many changes and additions agreed to by both parties through much negotiation.

---

[3] The "5" on the divorce decree is marked out and a "6" is penned in its place.

No claim as to the validity of the Divorce itself has been made but only to the terms of the Marital Dissolution Agreement.

To the extent the Motion claims counsel for the Plaintiff in any way deceived or the Court or the Defendant in believing the Marital Dissolution Agreement was other than as agreed to counsel strongly denies such allegations. It is important to note that counsel for the Plaintiff was not present when the Defendant testified that she accepted the terms of the Agreement and would have acknowledged the agreement was in fact that as agreed to between the parties.

In 2004, husband requested a hearing on wife's motion or for the court to declare a new trial only on the property and support issues, if it saw fit. However, as previously stated in this opinion, on July 3, 2006, wife's motion was ultimately dismissed, because neither party took any action to pursue the motions.

While the record indicates that complaints arose, in 2004, regarding which MDA should have been attached to the final divorce decree, neither party sufficiently pursued motions to alter or correct any alleged inaccuracies. This inaction left the MDA dated April 6, 2004, which was notarized and signed by both husband and wife, as the filed MDA accompanying the final divorce decree. It is therefore evident that the April 6, 2004 MDA was, or has become, the final MDA between the parties. Accordingly, we hold that the trial court properly referenced the April 6, 2004 dated MDA filed along with the final divorce decree while resolving the parties' present dispute regarding alimony arrearages.

**B.**

Next, husband argues that the trial court erred because it failed to apply the doctrine of laches to bar wife's claim. The parties agree that the present matter is governed by a ten year statute of limitations applied to judgments. The doctrine of laches may be applied, even where the action is governed by an applicable statute of limitations, when the party is guilty of gross laches; gross laches requires prejudice to the defendant, such as a loss of evidence and witnesses. *See e.g., **Finova Capital Corp. v. Regel***, 195 S.W.3d 656, 660 (Tenn. Ct. App. 2005). The Supreme Court stated, in ***John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.***, that

[r]elief is generally refused by courts of equity, because of lapse of time, only in such cases where the loss of evidence, death of witnesses or parties, and failure of memory resulting in the obscuration of facts to the prejudice of the defendant, render uncertain the ascertainment of truth, and make it

impossible for the court to pronounce a decree with confidence... The doctrine of laches... is not an arbitrary or technical doctrine. No hard and fast rule for its application can be formulated.

The application of the doctrine in the first instance lies within the discretion of the trial court and it will not be reversed except upon a showing of an abuse of discretion. Such application depends upon the equities at stake in each individual case…

*John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 715 S.W.2d 41, 46 (Tenn. 1986) (internal citations, quotations, and italics omitted).

Husband argues that he has been unjustly prejudiced by wife's ten-year delay. He alleges wife's delay has resulted in: accumulated interest, in excess of forty-eight thousand dollars; the loss of a key witness, Mary Davis, who could have attested to wife's "true financial situation;" and the destruction of insurance documents and bank records from 2001-2004.

Husband's argument that the delay has resulted in the loss of insurance documents pertaining to wife's alleged antique collection, and husband's bank records from years preceding the divorce is of minimal, if any, relevance to the present dispute. In addition, any prejudice resulting from accrued interest on the overdue alimony is not pertinent to our review, because the trial court did not award wife any interest.

Despite husband's allegation that essential documents regarding his financial situation have been destroyed, the trial court was able to review tax returns produced by husband for years 2012-2016 in order to adequately assess his finances. The court determined that husband has a successful sales business and had earned substantial income during those years. The record supports this conclusion. The trial court therefore did not abuse its discretion in holding that husband's arguments that he did not have the ability to pay the alimony, was out of money, and was under tremendous financial pressure was not credible.

Husband also argues that wife failed to take sufficient action to seek the arrearages, and, as a result, wife has now waived any potential claim. Wife testified that she had unsuccessfully sought husband for many years. She testified that attempting to locate husband was "like leap frog. He'd go one place and then all of [the] sudden that address would disappear and you'd find another one." The record indicates that husband moved from Bristol, Tennessee to Cornelius, North Carolina; he then moved to Denver, North Carolina, and then another house in Denver; and then husband moved to Florida. The MDA obligated husband to notify wife of these several mailing address changes, but

he never fulfilled that obligation. Husband's several address changes and failure to fulfill his obligation to communicate his address to wife, renders husband's argument that wife waived, or voluntarily relinquished a known right, untenable. *See* ***Chattem, Inc. v. Provident Life & Acc. Ins. Co.***, 676 S.W.2d 953, 955 (Tenn. 1984) (holding that waiver is a voluntary relinquishment by a party of a known right).

The foregoing indicates that there was sufficient evidence to support the trial court's holding that husband has not been prejudiced by the delay and that wife has not waived her claim for support. Therefore, we hold that the trial court did not abuse its discretion in failing to apply the doctrine of laches or waiver to bar wife's claim.

## C.

Lastly, husband argues that the trial court erred because it failed to apply the doctrine of unclean hands to bar wife's claim. Husband argues that wife engaged in unscrupulous conduct regarding her assets at the time of the parties' divorce. The trial court held that there was insufficient proof to place weight on this argument, and that the deed husband alleges was improperly transferred was executed in 1999, two years before husband filed for divorce. It was also uncontroverted that husband knew about the property at issue.

As stated by husband in his brief on appeal,

> [i]t has long been the maxim that a party seeking equitable relief must not be guilty of unconscientious conduct or committed any wrong particular (sic) relevant to the transaction sought to be enforced.

The doctrine of unclean hands is a fundamental tenet of the courts of equity; it is based on the principles that he who seeks equity must do equity, and that he who has done inequity cannot have equity. ***In re Estate of Boote***, 265 S.W.3d 402, 417 (Tenn. Ct. App. 2007).

After a review of the record and the conduct subsequent to the divorce, it is clear to us that this is not a proper instance in which to apply the doctrine. Accordingly, we hold that the trial court did not abuse its discretion in failing to apply the doctrine of unclean hands to bar wife's claim.

**IV.**

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, James Russell Vaughn, Jr. Case remanded for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE