IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 5, 2019 Session

## HELEN BUTLER v. KBK OUTDOOR ADVERTISING ET AL.

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-MG-16-7  Ted A. Crozier, Judge**

_____

### No. M2019-00321-COA-R3-CV

_____

A widow sued to recover the value of her late husband's interest in a general partnership. She argued that, in compensating a deceased partner, the assets of the partnership had to be valued at fair market value.  On a motion for summary judgment, the trial court concluded that the partnership agreement provided that, upon a partner's death, partnership assets would be valued at book value.  After our review of the partnership agreement, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined.  RICHARD H. DINKINS, J., not participating.

Donald Capparella and Michael B. Bressman, Nashville, Tennessee, for the appellant, Helen Butler.

W. Timothy Harvey and Rebecca J. Garman, Clarksville, Tennessee, for the appellees, KBK Outdoor Advertising, Sue Kettle, and George R. Kettle.

### OPINION

### I.

Generally, "relations among partners and between the partners and the partnership are governed by the partnership agreement."  UNIF. P'SHIP ACT § 103(a) (UNIF. LAW COMM'N 1997); Tenn. Code Ann. § 61-1-103(a) (2018).  But to the extent the partnership

agreement is silent on such questions, the Revised Uniform Partnership Act[1] governs. Tenn. Code Ann. § 61-1-103(a). The dispositive issue in this appeal is whether the parties' partnership agreement is silent on the buyout price of a deceased partner.

James F. Butler, George R. Kettle, and Sue Kettle formed KBK Outdoor Advertising, a general partnership, to construct and rent billboards. Their partnership agreement provided for a term of 50 years. But it also addressed the prospect that a partner might die and cause a dissolution of the partnership. Under Article 5.3 of the agreement, "[i]f dissolution occur[ed] because of . . . death . . . of a Partner, the remaining Partners . . . ha[d] the right to continue the Partnership business under the same name, by themselves or with any other person or persons they may select." The article went on that, "[i]f the remaining Partners desire to continue the business, but not together, the Partnership shall be liquidated in accordance with 5.1."

Article 5.1 addressed winding up business following dissolution. It required assets of the partnership to "be sold and turned into cash as soon as possible and all debts [to be] collected." After satisfying all partnership debts and liquidation expenses, any surplus would be divided "among the Partners or their representatives according to each Partner's then Percentage Share of Income." A separate provision, Article 5.2, entitled "Accounting on Dissolution," specified that "[a]ssets and liabilities shall be taken at book value, but no value shall be assigned to good will or firm name."

Mr. Butler, who held a fifty percent interest in the partnership, died in early 2016. The two surviving partners, the Kettles, chose to continue the partnership business. With the aid of an accountant, they determined that the partnership's assets had a book value of $696,686.00. So the Kettles offered to pay Helen Butler, Mr. Butler's widow and the executrix of his estate, one-half of the book value—or $348,344—for Mr. Butler's interest.

Ms. Butler sued the partnership and the Kettles. She argued that the dissolution provisions of the partnership agreement were inapplicable because her husband's death did not trigger a dissolution of the partnership. She asked the court to value her husband's interest under the default provisions of the Revised Uniform Partnership Act. Under RUPA, a partner is dissociated from a partnership upon his death. *Id.* § 61-1-601(7)(A) (2018). Where the dissociation does not result "in a dissolution and winding up of the partnership business," the buyout price for the dissociated partner's interest is determined as "if, on the date of dissociation, the assets of the partnership were sold at a

---

[1] The statutes governing general partnerships are known as the "Revised Uniform Partnership Act" or "R.U.P.A." in popular usage. ALLAN DONN ET AL., REVISED UNIFORM PARTNERSHIP ACT Section 1202 cmt. (2020-2021 ed.). But they may also be referred to as the "Uniform Partnership Act." *Id.*; Tenn. Code Ann. § 61-1-1202 (2018).

price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern." *Id.* §§ 61-1-701(a), (b) (2018).

The Kettles moved for summary judgment. They asserted that, under the terms of the partnership agreement, the partnership did dissolve with the death of Mr. Butler. But despite the dissolution, they had the right "to continue t[he] [p]artnership business under the same name by themselves." So they argued that the Article 5 dissolution provisions of the partnership agreement governed the value of Mr. Butler's interest.

The court agreed with the Kettles. Although acknowledging that the dissolution provision of the partnership agreement contemplated the sale of all partnership assets, the court determined that liquidation was only required for "a total dissolution." Otherwise, "the right to continue under [Article] 5.3 would be counter to selling all the assets of the Partnership since once that is done you no longer have the means to conduct a partnership." So "[t]he only logical conclusion is that [Article] 5.2 applies and book value is what the parties intended if a Partner passes away." Based on that conclusion, the court granted the Kettles summary judgment.[2]

## II.

On appeal, Ms. Butler argues that, in granting summary judgment, the court erred in applying the dissolution provisions of the partnership agreement because the partnership never dissolved. Instead, she submits that the partnership agreement was silent on how to value a dissociating partner's partnership interest. So the valuation provisions of RUPA apply. She asks that the case be remanded for a determination of the buyout price of Mr. Butler's partnership interest under RUPA.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary

---

[2] The court granted partial summary judgment. Other claims raised by the parties were resolved by other orders and are not relevant to this appeal.

judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. So we review the record and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

Here, the parties agree that summary judgment turned on the proper interpretation of KBK Outdoor Advertising's partnership agreement. Partnership agreements are contracts. *Appling v. Ellendale 122 Prop.*, 718 S.W.2d 261, 266 (Tenn. Ct. App. 1986). Contract interpretation is also a question of law. *Angus v. W. Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). Thus, we "reach our own independent conclusions regarding the[] meaning and legal import" of the partnership agreement. *ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999); *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993)).

A.

In determining meaning and legal import, we begin with the words used in the agreement, giving the words their natural and ordinary meaning. *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). But our focus is not limited to one word or phrase. Rather, we ascertain meaning from the entire context of the agreement. *Elliott v. Elliott*, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004), *abrogated on other grounds by Eberbach v. Eberbach*, 535 S.W.3d 467 (Tenn. 2017); *Davidson v. Davidson*, 916 S.W.2d 918, 922 (Tenn. Ct. App. 1995).

The context of the agreement includes the law existing at the time of the agreement's execution. *Dick Broad. Co.*, 395 S.W.3d at 668; *see Kee v. Shelter Ins.*, 852 S.W.2d 226, 228 (Tenn. 1993) ("It is well established that the laws affecting enforcement of a contract, and existing at the time and place of its execution, enter into and form a part of the contract."). Because of this, "'the legal framework that existed at the time of a contract's execution must bear on its construction.'" *Vlach v. Vlach*, 556 S.W.3d 219, 222-23 (Tenn. Ct. App. 2017) (quoting *Fla. E. Coast Ry. Co. v. CSX Transp., Inc.*, 42 F.3d 1125, 1129 (7th Cir. 1994)).

Mr. Butler and the Kettles signed their partnership agreement prior to Tennessee's adoption of RUPA. Under the former Uniform Partnership Act, a partner's departure from the partnership caused a dissolution. UNIF. P'SHIP ACT § 801 cmt. 1. "Dissolution" meant "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on . . . of the business." Tenn. Code Ann. § 61-1-128 (repealed 2001). A deceased partner ceased to be associated with the business, so "the death of any partner" caused dissolution of the partnership. *Id.* § 61-1-130(4) (repealed 2001). Understood in that context, Article 5.3 of KBK Outdoor Advertising's partnership agreement, entitled "Right to Continue," applied when any partner died. It gave the

surviving partners the option "to continue the Partnership business" upon dissolution as defined under the former Uniform Partnership Act.

In 2001, Tennessee adopted RUPA. Revised Uniform Partnership Act, ch. 353, 2001 Tenn. Pub. Acts 775. RUPA introduced the concept of "'dissociation' . . . to denote the change in the relationship caused by a partner's ceasing to be associated in the carrying on of the business." UNIF. P'SHIP ACT § 601 cmt. 1. The term "dissolution" was retained, but given a new meaning. *Id.* Dissolution referred to the "commencement of the winding up process." *Id.* § 801 cmt. 2. The partnership would "complet[e] work in process" and then "sell[] its assets, pay[] its debts, and distribut[e] the net balance, if any, to the partners in cash according to their interests. *Id.* After that, "the partnership entity terminates." *Id.*

RUPA became applicable to all partnerships, even those like KBK Outdoor Advertising formed under the former Uniform Partnership Act, on January 1, 2002. Tenn. Code Ann. § 61-1-1206(b) (2018). Retroactive application of RUPA "change[d] the calculus of the deal for the partners" of partnerships formed under the former Uniform Partnership Act. ALLAN DONN ET AL., *supra*, at Section 1206 author's cmt. 2. So RUPA provided a transition period "afford[ing] existing partnerships and partners an opportunity to consider the changes effected by RUPA and to amend their partnership agreements, if appropriate." UNIF. P'SHIP ACT § 1206 cmt.

KBK Outdoor Advertising failed to consider the changes effected by RUPA on its partnership agreement. Article 5.3, which granted the surviving partners the right to continue the partnership business upon death of a partner, no longer had any effect after January 1, 2002. Under RUPA, the death of a partner does not necessarily result in a dissolution. In a partnership for a definite term, the death of a partner only results in a dissolution if "[w]ithin ninety (90) days after a partner's dissociation by death . . . at least half of the remaining partners express[ed] the will to wind up the partnership business."[3] Tenn. Code Ann. § 61-1-801(2)(A) (2018). Article 5.3 was drafted with the opposite eventuality in mind, that the remaining partners wanted to continue the partnership business. Such a provision is unnecessary under RUPA because the partnership, not just the partnership business, continues after the death of a partner.

Because the Kettles did not express the will to wind up KBK Outdoor Advertising within 90 days of Mr. Butler's death, Article 5.2 of the partnership, which addressed accounting on dissolution, did not apply. The partnership was not dissolved. *See id.*

---

[3] The partnership agreement might have provided that the death of a partner caused a dissolution. *See* Tenn. Code Ann. § 61-1-801(3) (permitting the partnership agreement to specify an event that would result in the winding up of the partnership business). But here the partnership agreement provided that KBK Outdoor Advertising would terminate by the death "of all of the then Partners."

B.

Having determined that neither Article 5.2 nor 5.3 applied, we conclude that the partnership agreement for KBK Outdoor Advertising is silent on the buyout price for the interest of a dissociated partner. So RUPA governs. *Id.* § 61-1-103(a). And the buyout price is determined based on the amount that would have been distributed to Mr. Butler if a winding up of the partnership business had occurred on the date of his death and "the assets of the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without [Mr. Butler]." *See id.* § 61-1-701(b).

### III.

We reverse the grant of summary judgment. The case is remanded for a determination of the buyout price for Mr. Butler's interest in KBK Outdoor Advertising under RUPA and for such other proceedings as are necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

6