W. Neal McBrayer, J.
The primary issue in this appeal is whether the former spouse of a military retiree is entitled to a share of his military retirement. The military retiree submits that, because of his service-connected disability rating of 100%, his former spouse is not entitled to a share of his military retirement. Based on its interpretation of the parties' marital dissolution agreement, the trial court ruled in favor of the former spouse and awarded her a percentage of the retiree's "total military retired pay," including disability benefits. Upon our de novo review, we conclude that the trial court erred in awarding the former spouse a percentage of the retiree's disability benefits. But the trial court correctly determined that the military retiree's disability *221 rating did not deprive his former spouse of an interest in his military retirement.
I.
Joanna Marie Vlach ("Wife") and Gregory Alan Vlach ("Husband") married on November 3, 1982, separated in April 2002, and ultimately divorced on December 9, 2002. The final decree of divorce entered by the Chancery Court for Montgomery County, Tennessee, incorporated the parties' marital dissolution agreement ("MDA"). As part of the property settlement, the MDA included a provision dividing the military retirement of Husband, who served in the United States Army.
The provision granted Wife a percentage of Husband's "disposable retirement pension." The provision also took into consideration that retired pay might be impacted by Husband's receipt of disability benefits. Specifically, the provision provided as follows:
The Wife shall receive twenty-six percent (26%) of the Husband's disposable retirement pension from the United States Army, with no consideration for disability until the Husband is classified as seventy-four percent (74%) disabled. It is the understanding and belief of the Parties that the Husband's twenty (20) year military retirement will equal to forty percent (40%) of his base pay, meaning that the Wife's entitlement would equal twenty-six percent (26%) of the total retirement, but if the percentage of base pay is higher, the controlling figure will be twenty-six percent (26%) of disposable retirement pension. The Parties will be married in excess of ten (10) years at the time of the entry of the Final Decree, during which time the Husband served on active duty with the United States Army. For the purpose of this agreement, disposable retirement pension will include, any and all VA, any early-out or separation bonus such as VSI or SSB, or other disability pension to which the Husband is entitled. The Husband waives any right of privacy, including but not limited to any rights pursuant to the privacy act 10 U.S.C. 1450(f)(3)(A) to the Wife in order to obtain information pertaining to the Husband's retirement account.
It is the Court's intention that if the Wife receives a deduction from his military retirement pension, such as for an election of VA disability, then the percentage of the military retirement pension will be adjusted to equal the same dollar sum as if no disability or similar deduction was made, up to 74% as previously stated.
As Husband's retirement date approached, Wife contacted the Defense Finance and Accounting Services ("DFAS"). An agency of the Department of Defense, DFAS "manages the pay accounts for and provides payroll service to ... military retirees." Kucinich v. Def. Fin. & Accounting Serv. , 183 F.Supp.2d 1005, 1007 (N.D. Ohio 2002). DFAS informed Wife that it could not issue a direct payment or garnishment based on the wording of the MDA. According to the DFAS, the language concerning Husband's retirement pay included "to [sic] many contingencies." And DFAS requested that the wording be clarified.
As requested, on January 7, 2011, Wife filed a "Motion to Clarify Final Decree of Divorce." Wife's motion also proposed an interpretation of the MDA language. Husband disputed Wife's interpretation, primarily on the ground that the MDA contemplated a retirement following twenty years of service. Because he had served longer and been promoted, Husband argued that Wife should not share in amounts earned after the divorce based on "longevity and additional promotions." Ultimately, *222 the trial court determined that Wife's motion was premature because Husband had not yet retired from the military.
Over three years later, Wife moved for a new hearing on her motion to clarify. Wife alleged that Husband planned to retire in September 2014. The court granted the motion, and a hearing was held in which no testimony was presented.
The trial court found that Husband had retired and that, although he had applied for disability, Husband was receiving his full retirement without any adjustment for disability. Based on the language of the MDA, the court concluded that "Wife should receive twenty six percent (26%) of the Husband's retirement and only if he received a VA disability exceeding seventy-four percent (74%) would there be any adjustment in the amount of the retirement benefit to the Wife."
When presented with this ruling, DFAS complained that the award of retirement pay was still subject to a condition and that it was ill-equipped to monitor if or when Husband received a disability rating. So, on Wife's motion, the court amended its order to provide that Wife "is awarded 26% of [Husband's] total military retired pay." The order further provided that, "[i]f [Husband] becomes classified as 74% or more disabled, he may petition this court for appropriate relief."
Approximately one month later, on April 10, 2015, Husband filed a motion informing the court that he received a disability rating of 100% effective October 1, 2014. As a result, Husband argued that Wife was not entitled to any of his military retirement.
The trial court determined that, "although the Husband has a VA disability rating of 100%, effective October 1, 2014, this does not relieve him of his obligation to pay military retirement." In the court's view, the language in the MDA concerning the division of the retirement benefit only permitted the court to consider a modification of the percentage awarded if Husband was determined to be more than 74% disabled. The court concluded that Wife was entitled to the 26% of the retirement benefit beginning October 2014. Because Husband had failed to pay Wife her portion of the benefits for ten months, the court found Husband in civil contempt and awarded Wife a judgment of $9,230.00, later reduced to $7,384.00 due to payments Wife had received. The court also awarded Wife attorney's fees of $1,000.
II.
On appeal, Husband argues that the language of the MDA "was intended to limit the Wife's ability to recovery [sic] a portion of the Husband's military retirement in the event the Husband was awarded a Veteran's Administration Disability in excess of 74%." Properly interpreted, Husband submits that the MDA entitled him to a greater percentage of his retirement in the event of disability and the entire amount in the event of a 100% disability.
A.
In order to understand the language used in the MDA, one must understand federal law governing military retirement pay at the time the MDA was drafted. MDAs are essentially contracts, and we construe them as such. Bogan v. Bogan , 60 S.W.3d 721, 730 (Tenn. 2001) ; Altman v. Altman , 181 S.W.3d 676, 680 (Tenn. Ct. App. 2005). The law existing at the time of a contract's execution forms a part of the contract. Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc. , 395 S.W.3d 653, 668 (Tenn. 2013). Because of this, "the legal framework that existed at the time of a contract's execution must bear on its construction."
*223 Fla. E. Coast Ry. Co. v. CSX Transp., Inc. , 42 F.3d 1125, 1129 (7th Cir. 1994).
Members of the United States Army[1] may retire after a specified period of service and receive "retired pay." 10 U.S.C. §§ 3911 - 3929 (Supp. 2016). The monthly amount of retired pay is based upon years of service and rank. Id. §§ 3926, 3991. Army veterans also may be eligible for "service-connected" disability benefits. 38 U.S.C. §§ 1110, 1131 (Supp. 2016). At the time the MDA in this case was drafted, in order to receive service-connected disability benefits, federal statute required the veteran to waive an amount of his or her retired pay equal to the amount of the disability benefit. Id. § 5305. The United States Supreme Court explained both the rationale behind the statute and the reason such a waiver would benefit the veteran:
In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. Because disability benefits are exempt from federal, state, and local taxation, military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income. Not surprisingly, waivers of retirement pay are common.
Mansell v. Mansell , 490 U.S. 581, 583-84, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) (internal citations omitted).
In 1982, Congress passed the Uniformed Services Former Spouses' Protection Act. Pub. L. No. 97-252, 96 Stat. 730 (1982). The Former Spouses' Protection Act authorizes state courts to treat "disposable retired pay" of a member of the armed forces as marital property subject to division. See 10 U.S.C. § 1408(c)(1) ("[A] court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.");[2] Johnson v. Johnson , 37 S.W.3d 892, 895 (Tenn. 2001), abrogated by Howell v. Howell , --- U.S. ----, 137 S.Ct. 1400, 197 L.Ed.2d 781 (2017). The Act defines "disposable retired pay" as "the total monthly retired pay to which a member is entitled" less certain amounts. 10 U.S.C. § 1408(a)(4)(A). Among those amounts "are [amounts] deducted from the retired pay of such member ... as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38 [of the United States Code]." Id. § 1408(a)(4)(A)(ii). Title 38 compensation includes disability benefits administered by the Department of Veterans Affairs ("VA") such as the disability benefits received by Husband. 38 U.S.C. §§ 1131 - 1137.
The Former Spouses' Protection Act is only a limited grant of authority to the states in an area that is otherwise preempted by federal law. Mansell , 490 U.S. at 588-89, 109 S.Ct. 2023. Based at least in part on the definition of "disposable retired pay," the Supreme Court, in Mansell v. Mansell , held that state courts *224 lack the authority to divide as marital property "total retired pay." Id. at 588, 109 S.Ct. 2023. As a result, state courts could not "treat as property divisible upon divorce military retirement pay that ha[d] been waived to receive veterans' disability benefits." Id. at 594-95, 109 S.Ct. 2023.
The holding in Mansell , as the Court recognized, had the potential to "inflict economic harm on many former spouses." Id. at 594, 109 S.Ct. 2023. As the dissent noted, the former spouse of a military retiree could be denied his or her share of the military retirement pay "simply because [the military retiree] elect[ed] to increase his [or her] after-tax income by converting a portion of that pay into disability benefits." Id. at 595, 109 S.Ct. 2023 (O'Connor, J., dissenting). Since Mansell , both courts and practitioners have struggled with how to ameliorate the harm.
The Tennessee Supreme Court dealt with the problem in Johnson v. Johnson , 37 S.W.3d 892 (Tenn. 2001). In that case, as part of their divorce, husband and wife entered into an MDA that awarded her one-half of husband's military retirement. Johnson , 37 S.W.3d at 894. Following the divorce, husband elected to receive disability benefits. Id. "His retirement pay was reduced by the amount of those disability benefits to avoid double payment," and "[a]s a result of these actions, payments to [wife] were reduced from $1,446.00 to $1,265.00, or by $181.00 per month." Id.
Wife petitioned the trial court to modify the final decree of divorce. She requested that her husband be ordered to pay the $181 per month in alimony "in order to avoid frustration of the final decree and impairment of her rights under the MDA." Id. The trial court denied the request, and we affirmed. Id.
On further appeal, our supreme court reversed. Id. at 898. Following the reasoning of a similar case out of Arizona, the court held that the MDA created a vested interest in husband's military retirement benefits. Id. at 897 (citing In re Marriage of Gaddis , 191 Ariz. 467, 957 P.2d 1010, 1013 (Ct. App. 1997) ). And wife's "vested interest cannot thereafter be unilaterally diminished by an act of the military spouse." Id. The court reasoned that "[s]uch an act constitutes an impermissible modification of a division of marital property and a violation of the court decree incorporating the MDA." Id. at 897-98.
Practitioners, on the other hand, addressed the problem by adding reimbursement or indemnification provisions to property settlement agreements. These provisions prohibited the military retiree from taking any action to reduce a former spouse's share of retired pay. If the retiree took such action, such as by waiving a portion of retired pay by electing to receive disability benefits, the provisions obligated the military retiree to reimburse the former spouse for any reduction in the former spouse's share of the pay. See, e.g. , Scheidel v. Scheidel , 129 N.M. 223, 4 P.3d 670, 672 (Ct. App. 2000) ; Owen v. Owen , 14 Va.App. 623, 419 S.E.2d 267, 268 (1992) ;[3] see also Mark E. Sullivan & Charles R. Raphun, Dividing Military Retired Pay: Disability Payments and the Puzzle of the Parachute Pension , 24 J. AM. ACAD. MATRIM. LAW. 147, 156-57 (2011) (describing "remedies" for the waiver of military retired pay in favor of VA disability benefits).
This year, in Howell v. Howell , the Supreme Court held that both the vested interest approach and the reimbursement *225 or indemnification approach were impermissible. --- U.S. ----, 137 S.Ct. 1400, 1405-06, 197 L.Ed.2d 781 (2017). Relying on its previous ruling in Mansell v. Mansell , the Court determined that either approach amounted to an award of military pay waived in order to obtain disability benefits. Id. at 1406. Although a divorce decree might vest a former spouse with an interest in a military retirement, "that interest is, at most, contingent, depending for its amount on a subsequent condition: [the military retiree's] ... waiver of that pay." Id. at 1405-06. And because the amount of the reimbursement or indemnification "mirrors the waived retirement pay, dollar for dollar," "such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress." Id. at 1406.
Although noting the hardship its holding might have on former spouses of military retirees, the Supreme Court also suggested alternative approaches to address that hardship in divorce proceedings. The state court could, in valuing and dividing marital property, "take account of the contingency that some military retirement pay might be waived." Id. Or the state court could "take account of reductions in value [of military retirement] when it calculates or recalculates the need for spousal support." Id.
B.
Turning to the language of Husband's and Wife's MDA, in light of the law existing at the time of its execution, we conclude that the language concerning Husband's military retired pay represented an attempt by Wife to avoid the negative consequences of Husband waiving retirement pay to receive disability benefits. By providing "that if the Wife receives a deduction from [Husband's] military retirement pension, such as for an election of VA disability, then the percentage of the military retirement pension will be adjusted to equal the same dollar sum as if no disability or similar deduction was made," the MDA sought to impermissibly award Wife a share of Husband's waived retired pay. To the extent it does so, the provision runs afoul of the Supreme Court's holding in Howell and is unenforceable. See id. at 1405 ("[F]ederal law completely pre-empts the States from treating waived military retirement pay as divisible community property.").
The provision did not, as Husband argues, "create a disability threshold at which time the Wife's interest in Husband's Military Retirement would be limited or terminated." According to Husband, "[t]here [wa]s no other reason why the language cited was included in the [MDA]." We disagree. As shown above, the reason for the language was clear: to protect Wife from a potential reduction in the value of her share of Husband's military retirement due to his receipt of disability benefits.
Of course, the practical effect of Husband's receipt of disability benefits might be a complete waiver of retired pay, which would result in Wife receiving no further retired pay. After all, 26% of $0 retired pay is $0. But in this case, Husband was not required to waive any of his retired pay despite receiving a "service-connected disability rating of 100%." In response to requests for admission, Husband admitted that he was receiving payments from both the DFAS and the VA. Husband further admitted that there had been no deduction from his retired pay that he received from the DFAS due to his disability benefits.[4]
*226 C.
Although not raised specifically as an issue by Husband, to prevent needless litigation, we exercise our discretion to review the language used in the trial court's orders. See Tenn. R. App. P. 13(b). The trial court awarded Wife "26% of [Husband's] total military retired pay." And, in a later order, the court provided that Wife's counsel could "prepare and submit to the Court any additional Order that may be necessary for the VA or DFAS to pay directly to [Wife] twenty-six percent (26%) of [Husband's] military retirement and disability pay." In both respects, the trial court erred.
As the Supreme Court has made clear, Congress has only authorized state courts to divide as marital property "disposable retired pay" as that term is defined by the Former Spouses' Protection Act. Mansell , 490 U.S. at 594-95, 109 S.Ct. 2023. Because the statutory definition of that term excludes disability benefits administered by the VA, the trial court lacked the authority to award a percentage of disability pay. 10 U.S.C. § 1408(a)(4)(A) ; Howell , 137 S.Ct. at 1406. Consequently, we modify the trial court's order to reflect that Wife is awarded a percentage interest in Husband's "disposable retired pay" as that term is defined by the Former Spouses' Protection Act.
D.
Wife requests an award of her attorney's fees on appeal. But she does not specify the basis for her request. Tennessee courts follow the American Rule, which provides that litigants are responsible for paying their own attorney's fees unless there is a statutory or contractual provision stating otherwise. Taylor v. Fezell , 158 S.W.3d 352, 359 (Tenn. 2005) (citing State v. Brown & Williamson Tobacco Corp. , 18 S.W.3d 186, 194 (Tenn. 2000) ). Having examined the MDA, we find no provision allowing for an award of attorney's fees in the event of post-divorce litigation. Consequently, we assume that Wife seeks attorney's fees under either Tennessee Code Annotated § 27-1-122 or Tennessee Code Annotated § 36-5-103(c). See Eberbach v. Eberbach , 535 S.W.3d 467, 475 (Tenn. 2017).
Tennessee Code Annotated § 27-1-122 is the frivolous appeals statute. The statute authorizes an award of "just damages," which can include attorney's fees, if we find an appeal "frivolous or taken solely for delay." Tenn. Code Ann. § 27-1-122 (2017); Chiozza v. Chiozza , 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). We do not find this appeal frivolous or any evidence that it was taken solely for delay.
Tennessee Code Annotated § 36-5-103(c) is part of the enforcement of orders statute. Among other things, the statute authorizes an award of attorney's fees "incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of *227 any child, or children, of the parties." Tenn. Code Ann. § 36-5-103(c) (2017). Here, Wife is seeking to enforce a division of marital property in a final decree of divorce, but even to the extent the statute is applicable, we decline to exercise our discretion to award attorney's fees to Wife under the statute. See Shofner v. Shofner , 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004) (noting that an award of attorney's fees incurred on appeal under Tennessee Code Annotated § 36-5-103(c) is discretionary).
III.
For the foregoing reasons, we affirm the judgment of the trial court as modified to reflect that Wife is awarded 26% of Husband's "disposable retired pay" as that term is defined by the Former Spouses' Protection Act. Wife's request for attorney's fees on appeal is denied. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

Members of other branches of the Armed Forces are entitled to similar retirement benefits. 10 U.S.C. §§ 6321 -6336 (Supp. 2016) (Navy and Marine Corps); 10 U.S.C. §§ 8911 -8929 (Air Force); see also Howell v. Howell , --- U.S. ----, 137 S.Ct. 1400, 1403, 197 L.Ed.2d 781 (2017).

The Former Spouses' Protection Act "revers[ed] the decision of the United States Supreme Court in the case of McCarty v. McCarty , 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which held that a court could not order a division of nondisability retired pay as part of a distribution of community property incident to a divorce proceeding." H.R. Rep. No. 97-749, at 165 (1982) (Conf. Rep.), as reprinted in 1982 U.S.C.C.A.N. 1569, 1570.

State courts also enforced such provisions. See, e.g. , Abernethy v. Fishkin , 699 So.2d 235, 240 (Fla. 1997), abrogated by Howell v. Howell , --- U.S. ----, 137 S.Ct. 1400, 197 L.Ed.2d 781 (2017) ; In re Marriage of Strassner , 895 S.W.2d 614, 618 (Mo. Ct. App. 1995).

The lack of a reduction in retired pay is not explained by either party, but Husband may be receiving Concurrent Retirement and Disability Pay ("CRDP").See Concurrent Retirement and Disability Pay (CRDP) , Def. Fin. & Acct. Serv., https://www.dfas.mil/retiredmilitary/disability/crdp.html (last updated Oct. 9, 2013). CRDP is a product of section 641 of the National Defense Authorization Act of Fiscal Year 2004, Pub. L. No. 108-136, 117 Stat. 1392, 1511-16 (2003). Under the Act, beginning on January 1, 2004, a service member with at least 20 years of service and a disability rating of at least 50% could receive disability pay without a corresponding reduction in retired pay. 10 U.S.C. § 1414. CRDP was phased in over time, but the phase-in was complete at the time of Husband's retirement. See id. § 1414(c). As Husband qualifies under the Act, we assume, based on his admissions in the trial court, Husband is receiving CRDP. If that is not the case and he has waived a portion of his retired pay, Husband could return to the trial court for relief.