IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 1, 2021 Session

## MELISSA ANN (LETNER) GRAYSON v. ELMER WAYNE GRAYSON

**Appeal from the Circuit Court for Monroe County**
**No. V-09-280S      J. Michael Sharp, Judge**

_____

**No. E2020-01339-COA-R3-CV**
_____

This appeal arose from a 2011 divorce decree awarding to the wife one-half of the husband's military retirement pay that had accumulated during the term of the marriage. At the time of the husband's retirement in 2018, the United States Defense Finance and Accounting Service would not disburse retirement funds to the wife due to deficient award language contained in the 2011 order. The Defense Finance and Accounting Service explained in a letter addressed to the wife that the 2011 order had failed to provide a method to calculate the marital portion of the husband's retirement pay and that it had no way to calculate retirement pay that had "accumulated during the term of the marriage." In order to effectuate the enforcement of its intended division of the husband's military retirement pay, the trial court attempted to correct its order by replacing "accumulated during the term of the marriage" with language compliant with the United States Department of Defense Financial Management Regulations ("DoD Regulations") and specifying that the wife should be awarded fifty percent of the husband's disposable military retired pay based upon his military pay grade rank and his creditable service years as of the date of the divorce. The trial court subsequently signed and entered two identical Military Retired Pay Division Orders, submitted by the wife, on September 1 and November 13, 2020. The husband has appealed. Upon review of the husband's argument that the trial court impermissibly revised its 2011 order, we conclude that the trial court maintained subject matter jurisdiction to clarify and correct its 2011 judgment. However, we determine that the language of the Military Retired Pay Division Orders is inconsistent with the intended division of military retirement pay outlined in the 2011 order and subsequently clarified in the August 2019 order. In addition, the orders do not provide sufficient findings of fact to explain the trial court's conclusion that the husband had obtained the pay grade of E7 and twenty-nine years of creditable service at the time of the divorce. We therefore vacate the trial court's August 2019 order and Military Retired Pay Division Orders entered on September 1 and November 13, 2020; remand the case to the trial court; and direct the court to incorporate language compliant with DoD Regulations while providing sufficient findings of fact and conclusions of law regarding variables necessary for either a formula award or hypothetical retired pay award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL
SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Clifford E. Wilson, Madisonville, Tennessee, for the appellant, Elmer Wayne Grayson.

Melissa A. Parsons, Etowah, Tennessee, for the appellee, Melissa Ann Letner Grayson.

**OPINION**

I.  Factual and Procedural Background

The plaintiff, Melissa Ann Letner Grayson ("Wife"), and the defendant, Elmer
Wayne Grayson ("Husband"), were married in October 1994 and divorced pursuant to the
trial court's order entered on May 18, 2011.  In its May 2011 order, the trial court indicated
that Husband was a full-time employee of the National Guard and that Wife had been
disabled due to a "prior serious work accident, wherein she was severely injured to the
point of suffering from post traumatic stress syndrome."  Due to Wife's disability and the
duration of the parties' marriage, the trial court found that Wife was entitled to alimony *in
futuro* in the amount of $600.00 per month until such time as Husband began receiving his
retirement pay from the military.  The trial court also determined:  "With regard to the
husband's retirement, the court finds that the wife shall receive one half of the husband's
retirement."

On June 3, 2011, Husband filed a motion to alter or amend the trial court's judgment
pursuant to Tennessee Rule of Civil Procedure 59.04.  In his motion, Husband requested,
*inter alia*, that the trial court "clarify the terms of the distribution of retirement benefits,
reconsider the application of *alimony in futuro*, and reconsider the allowance of alimony
during the period of time that [Wife] shall be residing in the marital residence."  In an order
entered on July 21, 2011, the trial court determined that its division of the marital estate
had been equitable and its award of alimony appropriate given Wife's needs and Husband's
ability to pay.  With regard to Husband's retirement funds, the trial court clarified that its
"intention was that [Wife] is entitled to one half of [Husband's] retirement fund
accumulated during the term of the marriage."  However, that order did not provide a
method of calculating the marital portion of the retirement considering that Husband had
not yet retired at that time.

Nearly seven years later, on April 17, 2018, Wife filed a motion to amend the trial
court's July 21, 2011 order.  Wife averred that she had received a letter from the Defense

Finance and Accounting Service ("DFAS")[1] instructing that the trial court's final order did not meet its requirement that "an actual dollar amount or percentage must be in the Order." Wife requested that the trial court amend the July 21, 2011 order to replace its language awarding Wife "one half of the husband's retirement" with "fifty percent" of Husband's retirement.

Thereafter, the trial court entered an agreed order amending the July 21, 2011 order and altering "paragraph three on page [four] of the order" to provide: "With regard to the accumulation of retirement benefits, the Court finds that its intention was that [Wife] is entitled to fifty percent (50%) of [Husband's] actual disposable retired pay accumulated during the term of the marriage." As a result, the agreed order merely modified the wording of the July 21, 2011 order in an attempt to satisfy DFAS's requirement that the division of the marital portion of Husband's military retirement be expressed in terms of a numerical percentage. The language limiting Wife's share of retirement benefits to that accumulated during the marriage remained unchanged.

Wife subsequently filed a petition for contempt ("the Petition") on October 2, 2018, after DFAS had again declined to disburse her portion of Husband's retirement funds. According to the Petition, DFAS had determined that the "award language" in the agreed order had failed to support "a community property award" under the Uniformed Services Former Spouses' Protection Act. In a June 27, 2018 letter attached to the Petition, DFAS informed Wife that the language, "accumulated during the term of the marriage," as adopted in the trial court's July 2011 order, did not accurately describe how military retirement is earned. DFAS clarified that military retirement does not accrue over time but is a "monthly entitlement based upon rank and length of service." DFAS referred Wife to the DoD Regulations, Volume 7B, Chapter 29, and requested that the trial court "provide instructions on how to calculate the marital portion, and all variable[s] necessary for the calculation." DFAS stated that until Wife obtained "a certified copy of a clarifying order with proper award language," it would be unable to disburse retirement funds to her.

According to the Petition, after she received the letter from DFAS, Wife attempted to have Husband's counsel sign a Military Retired Pay Division Order ("MRPDO"), which would make "appropriate provisions for the 50% share of [Husband's] retirement benefits." Because Husband refused to agree to the proposed MRPDO, Wife filed the Petition to hold Husband in willful contempt of the trial court's prior orders. Wife attached to the Petition her proposed MRPDO, which specified that Wife "is awarded 50% percent . . . of the member's disposable military retired pay" and that Husband had twenty-nine years of creditable service with a pay grade rank of E7 at the time of the divorce.

---

[1] DFAS is an agency of the Department of Defense and "manages the pay accounts for and provides payroll service to . . . military retirees." *Vlach v. Vlach*, 556 S.W.3d 219, 221 (Tenn. Ct. App. 2017) (quoting *Kucinich v. Def. Fin. & Accounting Serv.*, 183 F.Supp.2d 1005, 1007 (N.D. Ohio 2002)).

Husband filed a response to Wife's petition on November 2, 2018, arguing that the Petition failed to state a cause of action because the trial court lacked jurisdiction to amend a final judgment from 2011. Husband also argued that Wife was ultimately seeking an order that would alter the relief granted to her in the original July 21, 2011 order. According to Husband, because the July 21, 2011 order provided that Wife was entitled to one-half of Husband's retirement funds "accumulated during the term of the marriage" and because Husband had accrued no retirement benefits during the marriage, Wife was not entitled to any portion of Husband's retirement benefits. Specifically, Husband asserted that "50% of zero is zero." Inasmuch as Wife's proposed MRPDO did not expressly limit her award of fifty percent of Husband's retirement benefits to that which was accumulated during their marriage, Husband refused to sign the proposed order "giving [Wife] half of his retirement benefits after he had continued to serve for years in the military and receiving promotions."

Wife filed a memorandum in support of the Petition on March 4, 2019, arguing that the letter from DFAS indicated only that the phrase, "accumulated during the term of the marriage," was "not correct" on the May 29, 2018 agreed order. In Wife's memorandum, she contended that the proposed MRPDO simply allowed for fifty percent of Husband's disposable military retired pay based upon his rank of E7 and his twenty-nine years of creditable service "as of the date of the divorce."

Husband filed a response on March 25, 2019, asserting that Wife had effectively asked the trial court to amend its July 21, 2011 order and May 29, 2018 agreed order to provide her with fifty percent of his total military retirement pay "earned throughout his career both before and after the marriage of the parties." Husband particularly contested Wife's claim that he had twenty-nine years of creditable service at the time of the divorce, instead averring that his entire military career only lasted twenty-nine years as of 2018. According to Husband, a "considerable portion" of those twenty-nine years was spent as a part-time "weekend warrior[]." Husband further claimed that he did not hold the pay grade rank of E7 at the time of the divorce but rather that of E6. Husband also argued that Wife should not have been permitted to pursue her claim because she had been collecting alimony for over six years while residing with another man, and as such, she was seeking an equitable remedy with unclean hands. Lastly, Husband asserted that the Petition was time-barred, likening it to a motion to alter or amend the judgment under Tennessee Rule of Civil Procedure 59.04, which requires that such motion be filed within thirty days of the final judgment, or a motion under Tennessee Rule of Civil Procedure 60.02, required to be filed within one year of the final judgment. Husband requested that the trial court dismiss the Petition.

By order entered August 6, 2019, the trial court granted relief to Wife, indicating that the purpose of the order would be to "clarify its intention" and noting that the court had found no unresolved issues with regard to the divorce action or retirement award. The

court specifically found that it had intended to grant Wife fifty percent of Husband's disposable military retired pay, "based upon his military pay grade rank and his creditable service years, as of the date of the divorce." The trial court also stated that it "underst[ood] that [Husband's] military pay grade rank was E7 and his creditable service years were 29 as of the date of the divorce." The trial court, however, ultimately concluded that Husband was not in willful contempt of its prior orders.

Husband filed a motion to alter or amend the judgment on September 4, 2019, presenting the same arguments that he had made in his response to Wife's memorandum in support of the Petition. Husband argued that the trial court's findings that Husband had twenty-nine years of creditable service and had obtained the rank of E7 at the time of the divorce were not based on any evidence produced at a hearing and were inaccurate. Husband also posited that the trial court had failed to consider his argument that Wife sought relief with unclean hands because she had resided with another man for years while collecting alimony from Husband. Husband requested that the trial court amend its order and schedule an evidentiary hearing.

Husband supported his motion by affidavit, which reflected his sworn affirmation that (1) as of July 21, 2011, he had attained the rank of E6; (2) most of his service leading to that date was not full-time or active duty; (3) he had not been given credit for retirement until he completed twenty years of active service, which occurred on January 31, 2018; (4) had he retired in 2011, he would not have received any retirement benefits from the military; (5) he had served an additional six and one-half years of service after the divorce; (6) his actual disposable income from retirement was $1,194.45 per month; and (7) he had paid to Wife $46,800.00 in alimony over a span of six and one-half years during which Wife was residing with another man.

Following a hearing regarding Husband's motion on November 4, 2019, the trial court entered an order on December 4, 2019, requesting the Department of the Army to provide the court with (1) "active duty retirement orders" for Husband, (2) a "leave and earnings statement and/or retirement earning statement" for Husband, and (3) "any documentation reflecting [Husband's] participation in the Redux Plan including any monies he may have received from said plan." None of these documents is in the record, and there is no indication that the trial court ever made a factual finding concerning Husband's credentials at the time of the divorce based on these documents.

On September 1, 2020, the trial court approved and signed Wife's proposed MRPDO, awarding to Wife fifty percent of Husband's "disposable military retired pay" and concluding that "[o]n the date of the decree of divorce, May 11, 2011, [Husband's] military pay grade was E7, and the member had 29 years of creditable service." Husband's counsel did not sign or approve for entry the MRPDO. The trial court entered an identical MRPDO on November 13, 2020, with a certificate of service indicating that a copy had been forwarded to Husband's counsel. Husband timely appealed.

- 5 -

## II. Issues Presented

Husband has raised the following issues on appeal, which we have restated slightly as follows:

1.  Whether the trial court maintained subject matter jurisdiction to modify the July 21, 2011 order.

2.  If the trial court maintained subject matter jurisdiction to modify the July 21, 2011 order, whether the court erred by failing to address Wife's past collection of alimony while she resided with another man.

## III. Standard of Review

A threshold issue raised by Husband is whether the trial court maintained subject matter jurisdiction to amend the language of its previous orders. Without jurisdiction, a trial court's orders are void. *First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001). A trial court's lack of subject matter jurisdiction is "so fundamental that it requires dismissal whenever it is raised and demonstrated." *Id.* Furthermore, "issues regarding a court's subject matter jurisdiction should be considered as a threshold inquiry" and "should be resolved at the earliest possible opportunity." *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012). Therefore, when we determine that a trial court did not have subject matter jurisdiction over a case, we must vacate the judgment before reaching the merits of the case. *First Am. Trust Co.*, 59 S.W.3d at 141.

Concerning the standard of review for a trial court's exercise of subject matter jurisdiction over a controversy, this Court has recently explained:

> A challenge to the court's subject matter jurisdiction calls into question the court's authority to adjudicate the controversy before it. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012). Subject matter jurisdiction can only be conferred by the constitution or a legislative act. *Id.* When a party challenges a court's subject matter jurisdiction, the court must "determine the gravamen of the case and identify the source of its power to adjudicate that type of controversy." *Word v. Metro Air Servs., Inc.*, 377 S.W.3d 671, 674 (Tenn. 2012). The question of whether a court has subject matter jurisdiction over a case is a question of law, which we review de novo with no presumption of correctness. *Id.*

*Roland Digital Media, Inc. v. City of Livingston*, No. M2018-00163-COA-R3-CV, 2019 WL 117582, at *4 (Tenn. Ct. App. Jan. 7, 2019).

In addition, we review a trial court's findings of fact *de novo* upon the record with a presumption of correctness of the findings unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13 (d). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). If a trial court fails to make specific findings of fact, then no presumption of correctness attaches to the trial court's findings because "there was nothing found as a fact which we may presume correct." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). When a trial court fails to make factual findings, this Court may either remand the case to the trial court, directing it to issue sufficient findings and conclusions, or conduct a *de novo* review of the record to "determine where the preponderance of the evidence lies." *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013).

## IV. Trial Court's Entry of Subsequent Orders

### A. Subject Matter Jurisdiction

Husband asserts that the Petition functioned as a motion to alter or amend the trial court's July 21, 2011 and May 29, 2018 orders pursuant to Tennessee Rule of Civil Procedure 59.04. Husband further argues that the trial court amended these orders, pursuant to Rule 59.04, to reflect that Wife was entitled to fifty percent of Husband's retirement in total rather than fifty percent of the retirement that had accumulated during the parties' marriage. According to Husband, because the Petition was filed more than thirty days following entry of the July 21, 2011 order and the May 29, 2018 agreed order, the trial court lacked subject matter jurisdiction to amend these orders. Wife counters that the trial court did not modify its original orders, pointing out that the court in its August 6, 2019 order and the MRPDO "took great steps in reiterating it was only using different terms so that the Department of Defense would have the language it required to facilitate the Court's rulings." After careful review, we agree with Wife that the trial court maintained subject matter jurisdiction to facilitate the enforcement of its prior orders by correcting the language to comply with DFAS requirements and that it did not intend to amend its prior orders pursuant to Rule 59.04.

In determining whether the Petition was a Rule 59.04 motion to alter or amend the judgment, we must consider the substance rather than the form of the Petition. *See Dunlap v. Dunlap*, 996 S.W.2d 803, 812 (Tenn. Ct. App. 1998) ("The law is well-settled that, in ruling on post-trial motions filed by the parties, the courts of this state are required to consider the substance of the motion rather than its form or title."); *see also Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003) (concluding that the content of the motion indicated that the party was seeking relief under Rule 60.02 even though the motion did not mention Rule 60.02); *Bough v. Tenn. Dep't of Corr.*, No. E2017-02350-COA-R3-CV, 2018 WL 4181877, at *2 (Tenn. Ct. App. Aug. 30, 2018) (affirming the trial court's finding that the petitioner's improperly titled "motion to reconsider" was in substance a request to alter the

judgment under Rule 59.04). Rule 59.04 provides: "A motion to alter or amend a judgment shall be filed and served within thirty (30) days after the entry of the judgment." A Rule 59.04 motion to amend "may be granted (1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice." *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001) (quoting *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998)).

In the Petition, Wife did not present any claim resembling the grounds for amendment under Rule 59.04. Wife did not allege that controlling law had changed before the trial court's orders had become final, that new evidence had become available, or that the trial court's previous orders contained a clear error of law or needed to be amended to prevent an injustice. Moreover, Wife did not request that the trial court substantively modify its previous division of Husband's retirement benefits. Rather, Wife explained in the Petition that she had "attempted to have [Husband's] counsel to sign a Military Retired Pay Division Order, which makes appropriate provisions for the 50% share of [Husband's] retirement benefits." According to Wife's averments, she needed the MRPDO to be signed by Husband because the trial court's "award language" in its prior orders did not comply with DFAS requirements. Wife further requested that the trial court hold Husband in contempt of the court's prior orders and approve the MRPDO, which would have purportedly effectuated the enforcement of its prior orders.

Likewise, the trial court did not address the Petition as a Rule 59.04 motion to alter or amend the judgment. In its August 6, 2019 order addressing the Petition, the trial court found that the May 29, 2018 agreed order had become final, indicating that it was aware that the time for a Rule 59.04 motion had expired. Furthermore, the trial court explicitly stated: "The purpose of this order will be for this court to clarify its intention, in that this court finds that no issues with regard to this divorce suit, and specifically the retirement award, remain for determination." The court further stated:

> The court finds that [it] was, and remains, this court's intent to grant the petitioner, [Wife], one half of [Husband's] military retirement as part of the marital distribution of assets. The court finds that it was, and remains, the court's intent that [Wife] should receive 50% of [Husband's] disposable military retired pay, based upon his military pay grade rank and his creditable service years, as of the date of the divorce. The court understands that [Husband's] military pay grade rank was E7 and his creditable service years were 29 as of the date of the divorce.
>
> Based upon the above, the court finds that [Wife] is entitled to receive 50% of [Husband's] disposable military retired pay based upon his military pay grade rank, and his creditable service as of the date of the divorce.

The court further determined that Husband was not in willful contempt of the court's prior orders "given the reasonable question regarding the court's language as it applies to military benefit distribution . . . ."

By reason of the trial court's stated intent to clarify its prior orders and its correction of an error of wording in its previous orders, we determine that the trial court was proceeding pursuant to Tennessee Rule of Civil Procedure 60.01, which provides in pertinent part:

> Clerical mistakes in judgments, orders or other parts of the record, and errors therein arising from oversight or omissions, may be corrected by the court at any time on its own initiative or on motion of any party and after such notice, if any, as the court orders.

Although the trial court did not expressly enter its August 6, 2019 order and the MRPDO pursuant to Rule 60.01, the court's ostensible intention was to correct errors in the previous orders' language, which DFAS had determined to be incompatible with its requirements.

Clearly, the trial court's purpose in entering the August 6, 2019 order and the MRPDO was to address the contents of the June 27, 2018 letter from DFAS. In its letter directed to Wife, DFAS expressed why it could not effectuate the May 29, 2018 agreed order, stating:

> Please note that military retired pay does not accrue; it is a monthly entitlement based upon rank and length of service. If the award is intended to divide the marital portion, then the Department of Defense Financial Management Regulation Volume 7B, Chapter 29, requires that the court order provide instructions on how to calculate the marital portion, and all variable[s] necessary for the calculation.

In addition, a review of DoD Regulations confirms that the trial court's language limiting Wife's award of Husband's military retirement to that "accumulated during the term of the marriage" was incompatible with the DoD Regulations and failed to provide DFAS with a method of calculating the marital portion of Husband's retirement pay. These regulations in pertinent part provide:

> 290614.    Awards Based on Retired Pay Accrued During Marriage
>
> The designated agent cannot honor awards based on the value of the member's retired pay that has "accrued" during the marriage because military retired pay does not accrue over time. Military retired pay is not a pension. Rather, it is a statutory entitlement computed at the time the

member retires and it is based on the member's rank and total years of service at the time of retirement, or member's high-3 and total years of service.[2]

290615.        Awards of a Percentage of the Marital Portion

The designated agent cannot honor an award of a percentage of the "marital portion" or "marital share" of a member's retired pay unless the court order also provides all variables necessary for the calculation of the marital portion/share.

Dep't of Def. Fin. Mgmt. Reg., DoD 7000.14-R, Vol. 7B, Ch. 29, para. 290614 and 290615 (June 2021).

The trial court's July 21, 2011 order lacked compliance with paragraphs 290614 and 290615 of DoD Regulations by awarding Wife a percentage of the marital portion without providing DFAS with a method to calculate the marital portion. Therefore, inasmuch as military retirement does not accumulate over time as a typical retirement account does, the trial court's July 21, 2011 and May 29, 2018 orders erroneously limited Wife's award to that which "accumulated during the term of the marriage." Moreover, these orders failed to provide a calculation method for the marital portion pursuant to DoD Regulations. Accordingly, we conclude that the trial court's August 6, 2019 order and the MRPDO were entered in an attempt to correct this oversight by expressing the same intended division using DFAS-compatible language.

Further review of DoD Regulations sheds light on what was lacking from the trial court's July 21, 2011 and May 29, 2018 orders and the need to clarify the language to effectuate the court's intended division of military retirement pay. DoD Regulations provide that trial courts may ensure that a former spouse is awarded a portion of the military member's retirement pay without benefiting from the military member's post-divorce promotions and acquisition of years of creditable service by either expressing the retired pay award as a formula award or a hypothetical retired pay award. *Id.* at 290601 (F) ("If the former spouse and the member were divorced before the member became entitled to receive military retired pay, the retired pay award may be expressed as a formula or hypothetical retired pay award in accordance with paragraphs 290607 and 290608."). We conclude that such was the trial court's original intent in using language that limited the award to retirement pay that had "accumulated during the term of the marriage." Thus, to carry out its intended division of retirement pay, the trial court was tasked with replacing

---

[2] "Designated agent" is defined as "the agent authorized to review applications for direct payment made." Dep't of Def. Fin. Mgmt. Reg., DoD 7000.14-R, Vol. 7B, Ch. 29, para. 290206 (June 2021). "Member" is defined as "an individual who is on active duty, one who is a reservist, or one who is retired from military service." *Id.* at 290214.

"accumulated during the term of the marriage" with either a formula award or a hypothetical retired pay award.

A formula award computes the former spouse's property interest in the member's military retired pay "based on the relationship of the length of the parties' marriage during the member's creditable service (numerator) to the member's total service that is creditable toward retirement (denominator)." *Id.* at 290211. As set forth in DoD Regulations, in incorporating the formula award method, the trial court must provide DFAS with the number of months the couple was married during the member's military service. *Id.* at 290607(B). The number of months of marriage during military service becomes the numerator of a fraction. *Id.* At the time the member retires from the military, DFAS provides the denominator of the fraction, which is the member's total months of active duty service. *Id.* This fraction is then multiplied by the percentage of the former spouse's share provided by the trial court's order. *Id.* at Figure 29-1. DoD Regulations provide an example for how this is calculated. If the couple is married for 144 months during the member's military service, and the member later retires with 240 months of service, DFAS multiplies the awarded percentage by 144/240, which results in the percentage of the member's disposable retired pay that the former spouse will be awarded. *Id.* at 290607(D). In the example provided, the former spouse would be awarded thirty percent of the member's disposable retired pay. *Id.*

As provided by Figure 29-1, an example order provided by DoD Regulations, the formula award should be expressed as such: "The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying ____ percent times a fraction, the numerator of which is ____ months of marriage during the member's creditable military service, divided by the member's total number of months of creditable military service." *Id.* at Figure 29-1.

A hypothetical award, as set forth in DoD Regulations, is an alternative method of calculating the division of retirement pay, in which the member's retirement pay is calculated as "though the member had retired at the time of the court order dividing military retired pay or some other date prior to the member's actual retirement." *Id.* at 290608(B). In order for DFAS to calculate the proper hypothetical retired pay amount, the trial court must provide in its order the following variables: (1) the percentage the former spouse is awarded, (2) the hypothetical years of creditable service, (3) the hypothetical retired pay base (high-3), and (4) the hypothetical retirement date. *Id.* at 290608(F). As provided by Figure 29-1, this award should be expressed as: "The former spouse is awarded ____ percent of the disposable military retired pay the member would have received had the member retired with a retired pay base (high-3) of ____ and with ____ years of creditable service on ____." *Id.* at Figure 29-1.

DoD Regulations also provide two variations of the hypothetical retired pay award: (1) a hypothetical award for members who entered into service before September 8, 1980,

- 11 -

and (2) a hypothetical award calculated as of the time of the member's actual retirement date. *Id.* at 290608(A) and (G). With regard to the former, if the member entered the service before September 8, 1980, the trial court would use the member's rank for the third variable instead of the member's hypothetical retired pay base. *Id.* at 290608(A). Trial courts should express the hypothetical retired pay award for members who entered into the service before September 8, 1980, as: "The former spouse is awarded ____ percent of the disposable military retired pay the member would have received had the member retired with the rank of ____ and with ____ years of creditable service on ____." *Id.* at Figure 29-1. The latter variation should be utilized when the trial court intends to base the member's hypothetical retired pay on "the pay tables in effect at the time the member becomes entitled to receive military retired pay." *Id.* at 290608(G). Figure 29-1 instructs that trial courts should express this type of hypothetical retired pay award as: "The former spouse is awarded ____ percent of the disposable military retired pay the member would have received had the member retired on his actual retirement date with the rank of ____ and with ____ years of creditable service." *Id.* at Figure 29-1. If the trial court attempts to use one of the hypothetical retired pay award methods and its order does not include any of these necessary variables, the court must "clarify the award." *Id.* at 290608(H).

Although the trial court did not expressly state that it was employing a hypothetical award method in its August 6, 2019 clarifying order or the MRPDO, it provided what it found to be Husband's pay grade rank and years of creditable service at the time of the divorce, indicating an attempt to utilize one of the variations of the hypothetical retired pay award. We conclude that Wife, having filed her Petition after Husband refused to agree on any missing variables in her proposed MRPDO, was merely requesting that the trial court "clarify the award" in such a way as to comply with DoD Regulations and provide an appropriate method to calculate the marital portion of Husband's disposable retirement pay.

We also conclude that the trial court's August 6, 2019 order and the MRPDO constituted attempted clarifications and corrections of an error arising from an oversight pursuant to Rule 60.01, rather than a substantive change in the court's prior division of marital property pursuant to Rule 59.04. Because the trial court's prior orders inaccurately provided that Wife would receive one-half of Husband's retirement accrued during the marriage and failed to provide DFAS with a method to calculate the marital portion of Husband's retirement pay, we determine that the trial court maintained subject matter jurisdiction to clarify its orders and effectuate the enforcement thereof.

This type of clarification falls squarely within the parameters of Rule 60.01. *See Jackman v. Jackman*, 373 S.W.3d 535, 542 (Tenn. Ct. App. 2011) (affirming that Rule 60.01 is "intended to be used to correct errors in a judgment which cause the judgment to fail to reflect the court's ruling accurately") (quoting *Addington v. Staggs*, No. 88-214-II, 1989 WL 5453, at *3 (Tenn. Ct. App. Jan. 27, 1989)); *Battleson v. Battleson*, 223 S.W.3d 278, 288 (Tenn. Ct. App. 2006) (concluding that it was "within the province of the trial

court to clarify, interpret or explain what it meant in its prior order," pursuant to Rule 60.01, when a provision in its parenting plan did not "make sense on its face" and required clarification); *Stout v. Stout*, No. E2013-00760-COA-R3-CV, 2013 WL 6858279, at *4 (Tenn. Ct. App. Dec. 30, 2013) ("This Court has previously recognized that a trial court may retain jurisdiction to establish or maintain a QDRO with regard to the division of retirement benefits incident to divorce" and "that the trial court has the authority, pursuant to Tennessee Rule of Civil Procedure 60.01, to correct an error in a judgment *sua sponte* without limitation as to time.") (internal citations omitted).

## B. Effect of Subsequent Orders

Although Husband's postulate that the trial court lacked subject matter jurisdiction is unavailing, Husband is understandably concerned that ambiguity in the MRPDO could lead DFAS to perceive that the trial court had awarded to Wife fifty percent of Husband's total disposable retired pay, including promotions and years of creditable service gained following the 2011 divorce. The November 13, 2020 MRPDO states:

IT IS THEREFORE ORDERED THAT:

The former spouse is awarded <u>Fifty (50%) percent</u> of the member's disposable military retired pay.

On the date of the decree of divorce, <u>May 11, 2011</u>, the member's military pay grade was <u>E7</u>, and the member had <u>29 years</u> of creditable service.

Inasmuch as the first provision ordering that Wife was awarded fifty percent of Husband's disposable military retired pay could be construed as meaning that Wife is entitled to fifty percent of Husband's total retirement pay and, on its face, seemingly deviates from the trial court's original July 21, 2011 order and August 6, 2019 clarifying order limiting Wife's award to Husband's pay grade and years of service "as of the date of the divorce," we must vacate the MRPDO as void. *See Maxwell v. Maxwell*, No. 01A01-9402-CV-00086, 1994 WL 527134, at *1 (Tenn. Ct. App. Sept. 28, 1994) (determining that "the QRDO amended, in an impermissible manner, the final judgment, and to the extent it deviated from the judgment, it is void"). The MRPDO's first provision concerning a percentage is consistent with language that would be used for a divorce that occurs after the member is already retired. Moreover, we reiterate that the MRPDO as entered by the trial omits proper formula award language or hypothetical retired pay award language that would allow DFAS to calculate Wife's portion of Husband's disposable military retired pay considering Husband had not yet retired at the time of the divorce.

To avoid any miscalculation by DFAS and further litigation concerning this issue, we vacate the MRPDO and direct the trial court to employ language for a formula award or hypothetical retired pay award in the example as provided by Figure 29-1 of the DoD

- 13 -

Regulations, which is the form that should be completed for divorces that occur on or before December 23, 2016. *See* Dep't of Def. Fin. Mgmt. Reg., DoD 7000.14-R, Vol. 7B, Ch. 29, Figure 29-1 (June 2021).[3]

## V. Findings of Fact and Conclusions of Law

Although the sufficiency of the trial court's findings of fact was not raised in Husband's appellate brief with regard to his pay grade and years of creditable service, "this Court has often raised the insufficiency of a trial court's findings of fact or conclusions of law *sua sponte* as a ground to vacate the trial court's judgment where a party appealed that judgment." *Burris v. Burris*, 512 S.W.3d 239, 254 (Tenn. Ct. App. 2016). Tennessee Rule of Civil Procedure 52.01 provides: "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."

This Court has held that the requirement of making findings of fact and conclusions of law is "not a mere technicality." *Paul v. Watson*, No. W2011-00687-COA-R3-CV, 2012 WL 344705, at *5 (Tenn. Ct. App. Feb. 2, 2012) (quoting *In re K.H.*, No W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009)). In addition, "[s]imply stating the trial court's decision, without more, does not fulfill this mandate." *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012). If a trial court fails to make findings of fact and conclusions of law, this Court is "left to wonder on what basis the court reached its ultimate decision." *Paul*, 2012 WL 344705, at *5 (quoting *In re K.H.*, No W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009)). Therefore, when a trial court "does not explain the basis of its ruling, we are hampered in performing our reviewing function, and we may remand the case with instructions to make requisite findings of fact and conclusions of law and enter judgment accordingly." *Owens v. May*, No. E2020-01322-COA-R3-JV, 2021 WL 3671097, at *3 (Tenn. Ct. App. Aug. 19, 2021).

The June 27, 2018 letter from DFAS, explaining that Husband's military retirement pay was predicated on his rank and length of service, precipitated a dispute concerning Husband's pay grade rank and length of creditable service existing at the time of the divorce in 2011. With regard to pay grade rank, only the hypothetical retired pay award for members who entered service before September 8, 1980, requires a trial court's order to list the member's rank as of a specified date. *See* Dep't of Def. Fin. Mgmt. Reg., DoD 7000.14-R, Vol. 7B, Ch. 29, Figure 29-1 (June 2021). Despite the trial court's apparent use of this method, there is no evidence in the record, and the trial court made no

---

[3] The MRPDO as entered by the trial court appears to be derived from Figure 29-2 of the DoD Regulations, which should only be used for divorces that have occurred after December 23, 2016. *Id.* at Figure 29-2. It also appears that the MRPDO utilizes language that applies to members who entered the service before September 8, 1980. The MRPDO additionally omits altogether one of the enumerated methods for calculation of the marital portion.

- 14 -

determination, that Husband entered military service before September 8, 1980. In fact, based on the trial court's findings in its May 2011 order, Husband was forty-four years old at the time of the divorce, meaning that he would have been only thirteen years old in 1980. Therefore, it is unclear why Husband's rank at the time of the divorce was a source of contention. If the trial court intended to use this method, it erred in failing to provide findings of fact to support a conclusion that Husband entered the service before September 8, 1980.

However, if the trial court intended to utilize the hypothetical retired pay award for members who entered the service on or after September 8, 1980, the trial court was required to provide Husband's <u>retired pay base</u>, as opposed to pay grade rank, and years of creditable service as of the time of the divorce, including corresponding findings of fact that support those two variables. *Id.* at 290608(A), (E)(2), and (F). The trial court's August 6, 2019 order and the MRPDO do not include findings of fact with regard to Husband's retired pay base in compliance with the hypothetical retired pay award method. In addition, the trial court did not provide findings of fact to support its determination that Husband had attained twenty-nine years of creditable service at the time of the divorce.

With regard to Husband's years of creditable service, in its August 6, 2019 order, the trial court merely stated that Husband's "creditable service years were 29 as of the date of the divorce." Notwithstanding this conclusion, the only evidence contained in the record is Husband's affidavit attached to his motion to amend the August 6, 2019 order, in which he swore that he had only completed twenty years of active service when he retired on January 31, 2018.

In response to Husband's motion to alter or amend the judgment and attached affidavit, the trial court entered an order on December 4, 2019, ordering the Department of the Army to provide to the court Husband's "active duty retirement orders," "leave and earnings statement and/ or retirement earning statement," and "any documentation reflecting [Husband's] participation in the Redux Plan including any monies he may have received from said plan." The next entry in the record is the MRPDO initially entered by the trial court on September 1, 2020, concluding that Husband had twenty-nine years of creditable service at the time of the divorce. In the order, the trial court neither indicates that a hearing was conducted to evaluate the documentation requested from the Department of the Army nor whether the trial court ever received such documentation.

The only findings of fact contained in the MRPDO reflect that Husband and Wife were married on October 14, 1994, and divorced pursuant to a final decree on May 18, 2011; Husband and Wife were married for a period of ten or more years while Husband performed at least ten years of service creditable for retirement eligibility purposes; if Husband was on active duty at the time of the order, his rights under the Servicemembers' Civil Relief Act had been observed and honored; and the trial court had jurisdiction over Husband by reason of his domicile in the territorial jurisdiction of the Court during the

divorce proceeding. Through this decree, the trial court "ordered" that: (1) "The former spouse is awarded <u>Fifty (50%) percent</u> of the member's disposable military retired pay" and (2) "On the date of the decree of divorce, <u>May 11, 2011</u>, the member's military pay grade was <u>E7</u>, and the member had <u>29 years</u> of creditable service."

The trial court's determination that Husband had twenty-nine years of creditable service at the time of the divorce appears not to be based upon Husband's sworn affidavit, the only evidence contained within the appellate record. Ultimately, the trial court did not support its conclusion with any delineated findings of fact in the August 6, 2019 clarifying order or the MRPDO. *See In re Caleb F.*, No. M2016-01584-COA-R3-JV, 2017 WL 5712992, at *6 (Tenn. Ct. App. Nov. 28, 2017) ("Under Rule 52.01, the trial court's order should indicate why and how it reached a decision, and which factual findings led the court to rule as it did.").

We "must be able to ascertain 'the steps by which the trial court reached its ultimate conclusion on each factual issue.'" *Id.* (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)). Without any findings of fact that would connect the trial court's December 4, 2019 order requesting documentation from the Department of the Army with its ultimate conclusion that Husband had obtained twenty-nine years of service in 2011, we are left with no explanation for the court's conclusion and no ability to review Husband's and Wife's countervailing claims.

Upon concluding that a trial court's order is unsupported by sufficient findings of fact, this Court has previously explained:

> Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law," unless the trial court's decision involves only a clear legal issue or the trial court's decision is readily ascertainable.

*Babcock v. Babcock*, No. E2014-01670-COA-R3-CV, 2015 WL 1059003, at *6 (Tenn. Ct. App. Mar. 9, 2015) (quoting *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011)). In the case at bar, the principal issue is a factual one, and the record is not sufficiently adequate to facilitate a *de novo* review. Therefore, we remand this case and direct the trial court to make sufficient findings of fact and conclusions of law with respect to variables related to either a formula award or hypothetical retired pay award, whichever the trial court may choose to utilize.[4]

---

[4] The variable required by the formula award would be the number of months Husband and Wife's marriage continued during Husband's creditable service (the numerator). The variables required by the hypothetical retired pay award would include Husband's retired pay base and years of creditable service.

## VI. Doctrine of Unclean Hands

Husband urges that the trial court erred by failing to address his argument that Wife should have been barred from seeking equitable relief because she had been residing with another man for over six years while collecting alimony from Husband. In presenting this argument, Husband repeats his contentions regarding the nature of the Petition and the trial court's subsequent orders, which he alleges increased Wife's share of his retirement pay. Husband specifically asserts:

> Waiting some nine (9) years to obtain a change in the division of the retirement amount does deny [Husband] the opportunity to challenge other aspects of the divorce [j]udgment and it is respectfully submitted that viewing the equities of these parties in 2020 as opposed to 2011 should require the trial court to take into account the unclean hands of [Wife] by collecting $46,800.00 in alimony while living with another man . . . . It is respectfully submitted that the learned trial court erred in entertaining [Wife's] request to increase [Wife's] share of [Husband's] military retirement and then granting that request.

However, as we concluded previously, Wife was merely requesting that the trial court correct the award language of its prior orders so as to be in compliance with DoD Regulations and effectuate the enforcement of the court's intended division of Husband's military retirement pay as set out in its 2011 order.

Furthermore, the doctrine of unclean hands has limited application to divorce cases. This Court has previously elucidated:

> The doctrine of unclean hands is an equitable doctrine based on the principle that "he who seeks equity must do equity." *In re Estate of Boote*, 265 S.W.3d 402, 417 (Tenn. Ct. App. 2007). "When the doctrine applies, it provides the court with a basis to decline to grant relief to parties who have willfully engaged in unconscionable, inequitable, immoral, or illegal acts with regard to the subject matter of their claims." *Id.* (footnote omitted). But in divorce litigation, the doctrine only applies when the inequitable conduct constitutes "fraud and deceit upon the court." *Chastain v. Chastain*, 559 S.W.2d 933, 935 (Tenn. 1977).

*Norman v. Norman*, No. M2015-02364-COA-R3-CV, 2017 WL 3705121, at *5 (Tenn. Ct. App. Aug. 28, 2017). Here, Husband has not alleged that Wife engaged in conduct that would constitute "fraud and deceit upon the court." Therefore, even had Wife "sought and received an equitable remedy . . . by increasing her share of [Husband's] military retirement," the doctrine of unclean hands would have no applicability to the issue.

- 17 -

Considering that Husband's argument is premised on his contention that Wife sought and received an enlargement of her share of his retirement pay, we find Husband's unclean hands argument unavailing. Moreover, to the extent that the trial court failed to address Husband's argument in this regard, considering the limited applicability of the doctrine of unclean hands to divorce actions, the trial court's disregard of this argument was harmless error.

## VII. Conclusion

For the foregoing reasons, we vacate the trial court's August 6, 2019 order; September 1, 2020 Military Retired Pay Division Order; and November 13, 2020 Military Retired Pay Division Order and remand the case to the trial court for entry of an order incorporating language consistent with the example provided by DoD Regulations. We also direct the trial court to provide sufficient findings of fact and conclusions of law with regard to variables required by either a formula award or hypothetical retired pay award, whichever it may choose, when entering further orders to effectuate its division of the parties' marital property. Costs on appeal are taxed equally, one-half to Husband and one-half to Wife.

s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE